# EXHIBIT B

# IN THE CIRCUIT COURT OF MONTGONERY COUNTY, MARYLAND

**Ann R. Rupli**
1914 Elkhart Street
Silver Spring, Md.  20910

### Plaintiff

vs.                                  CASE NO. _V341223_

**American Home Mortgage**
**Corporation**
c/o CSC – Lawyers Incorporating Service Company
7 St Paul Street,  Suite 1660
Baltimore, Maryland  21202

- and -

**Mortgage Electronic Registration Systems, Inc.**
c/o Sharon Horstkamp, Registered Agent
1818 Library Street – Suite 300
Reston, Virginia  20190

### Defendants

\* \* \* \* \*

**Triad Guaranty Insurance Corp.**
[For Informational Purposes Only]
101 South Stratford Road
Winston-Salem, North Carolina 27104

- and -

**Andrew Valentine, Trustee**
[For Informational Purposes Only]

RECEIVED

NOV 2 9 2010

Clerk of the Circuit Court
Montgomery County, Md.

1

c/o The Corporation Trust Incorporated
351 West Camden Street
Baltimore, Maryland 21201

## PRELIMINARY COMMENT

Plaintiff's credit score was above 700 and she has worked for a Federal agency for over 23 years. She *was not* a subprime borrower. The mortgage offered by American Home Mortgage has an interest rate subject to change on the first of every month, with a maximum rate of 13%. If added interest cannot be covered by monthly payments, this unpaid interest is deemed borrowed and added to Principal, increasing the loan by up to 25%. On May 1, 2011 her monthly payment will rise from $2,193 to $5,560, over 250%, where it will remain for the next 429 months.

Prior to accepting this mortgage, Plaintiff was told that if she made her monthly payments for two years, she could get refinanced with a sustainable rate of interest that would remain fixed. On this basis, she accepted this loan.

Plaintiff made her payments in a timely fashion without fail. Inexplicably, one payment was credited to *Miscellaneous*. Reports were then sent to credit tracking agencies, informing them that her mortgage payment was not made. Her next payment was credited to the prior month, and reports were again sent to credit tracking agencies, stating that her current payment was not made. In this manner, her high credit rating and refinancing prospects were wrecked. Plaintiff applied for a loan modification *twice*, the second time with assistance of counsel. At every

encounter, Defendants were uncompromising. Plaintiff has exhausted every avenue available. Defendants' intransigence is the driving force resulting in this lawsuit.

Defendants were out to please investors. Homeowners were just a means for creating *debt product* to reach an end. Plaintiff's deed of trust became a commodity, serving as collateral for an asset-backed security. Unlike most commodities, mortgages are not inanimate objects. Behind every mortgage is a home. Under the roof of this home dwells a family. The same terms in Plaintiff's mortgage that enhanced its value as an investment, also rendered it unsustainable to a homeowner. To appease foreclosure, a mortgage must return again to being *just a mortgage*. As this lawsuit illustrates, the journey backwards from being a debt product commodity to just a mortgage has huge obstacles to overcome.

## PETITION FOR DECLARATORY RELIEF

Ann R. Rupli [hereafter *Robin Rupli* or *Plaintiff*], states as her cause of action against Defendants as follows.

## IDENTITY OF PARTIES AND LAND

1. Plaintiff is an individual and borrower on a deed of trust issued by American Brokers Conduit, a fictitious name for American Home Mortgage Corporation [hereafter *American Home Mortgage*] in Montgomery County, Maryland. This deed of trust was signed by Plaintiff on December 29, 2006.

2. Plaintiff possesses an interest in property located in Montgomery County, Maryland, known and referred to as 1914 Elkhart Street, Silver Spring, Maryland 20910. The legal description of this property is that Lot numbered 8 in Block numbered 22, in the subdivision known as Woodside as per plat thereof recorded in Plat Book 14, at Plat No.917 of the Land Records of Montgomery County, Maryland, including all improvements lying thereon. Hereafter, this street address and legal description shall be known and referred to as *Plaintiffs' Property*.

3. American Home Mortgage was a New York corporation that originated home loans. On July 25, 2009, its charter for doing business in Maryland lapsed. Its current status with the Maryland Secretary of State is *forfeited*, which means that American Home Mortgage no longer possesses the privilege of doing business in Maryland and it can no longer invoke the protection of Maryland courts.

4. Mortgage Electronic Registration Systems Inc. [a/k/a *MERS*] is a Delaware corporation. Its principle place of business is located at 1818 Library Street – Suite 300, Reston, Virginia 20190. According to its website, "MERS is an innovative process that simplifies the way mortgage ownership and servicing rights are originated, sold and tracked." This company was created in 1998.

5. Triad Guaranty Insurance Corporation is a Delaware corporation with its principle place of business located at 101 South Stratford Road, Winston-Salem, North Carolina 27104. Triad Guaranty provides mortgage insurance coverage to

lenders. This company issued a mortgage insurance policy [Certificate No. 0703774, Mortgage Loan No. 0031566946] to American Home Mortgage Servicing Inc. regarding a property at 1914 Elkhart Street, Silver Spring, Md. 20910 [Plaintiff's home]. Triad Guaranty ceased issuing new commitments for mortgage guaranty insurance on July 15, 2008. Triad Guaranty is joined for two reasons. First, this company has an interest in the first priority status of the mortgage which it has insured. Second, because it is a party known to have an interest in Plaintiff's home, this information makes it an indispensable party to these quiet title proceedings. Triad Guaranty is not being named as a Defendant.[1]

6. Andrew Valentine is joined for informational purposes only, because he is named as Trustee on the Deed of Trust. Mr. Valentine *is not* a party defendant.

## JURISDICTION and VENUE

7. Pursuant to Md. Code Real Prop. § 14-108, this Court has original jurisdiction over this *in rem* proceeding relating to an encumbrance of property because Plaintiff's Property is situated in this county.

8. American Home Mortgage holds the title to *Plaintiff's' Property* by virtue of a deed of trust filed with the Montgomery County Land Records Department [hereafter Montgomery County *Register of Deeds*], which can be found at Liber 33811, Pages 797 - 818 dated February 13, 2007.

---

[1] See Plaintiff's Exibit 6, Mortgage Insurance Policy, consisting of a letter from Triad Guaranty and a Disclosure at closing that this coverage would be bought.

9. Pursuant to Md. Code Real Prop. § 3-103, this Court is the proper venue for bringing this lawsuit because all deeds and other instruments affecting Plaintiffs' Property are recorded in this county.

## PERTINENT FACTS AND LAW

10. Plaintiff executed a deed of trust with American Home Mortgage on December 29, 2006. This deed of trust was recorded on February 13, 2007.

11. This deed of trust is only signed by Plaintiff. It is not signed by the lender, American Home Mortgage or Mortgage Electronic Registration Systems.

12. Plaintiff borrowed $579,500. If monthly payment increases did not keep pace with interest rate increases, an *Adjustable Rate Rider* allows the principal to rise to $724,375 [i.e. 125% of $579,500.] This deed of trust contains a *power of sale* clause, allowing the lender to sell the home if the borrower is in default.

13. American Home Mortgage's *Adjustable Rate Rider* also allowed for increases in the interest charged. Initially, the interest rate was set at 1.625% from December 30, 2006 to January 31st, 2007. On February 1, 2007 it rose to 8.808%. Beginning on March 1, 2007 and *on that day everyday thereafter* it was subject to further interest rate increases. ¶ 4 (D) of the Adjustable Rate Rider states:

> "My interest rate will never be greater than 10.550% (Cap), except that following any sale or transfer of the property which secures repayment of this Note *after the first interest rate Change Date*, the *maximum interest rate will be the higher of the Cap or 5 percentage*

*points greater than the interest in effect at the time of such sale or transfer.*"[2] [Emphasis added.]

14. American Home Mortgage was closing an offering of mortgage backed securities on December 28th, 2006. Five days beyond this closing date were allowed to submit mortgages.[3] For purposes of interpreting ¶ 4(D) above [i.e. *following any sale ...*], Plaintiff's deed of trust was already sold on its day of execution. The first change date was March 1, 2007. The maximum interest rate *was not* 10.55%. The maximum cap was the rate at the time of this sale [i.e. 8.08%] plus 5.00%, which equals 13.08%.

15. Mortgage Electronic Registrations Systems Inc. is described in the deed of trust as a *nominee* for American Home Mortgage, its successors and assignees [see *Definitions*, ¶ (E) on p. 2]. It is also named as the *beneficiary* [see *Transfers of Rights in Property* at p. 3]; but this statement is qualified by another clause on the same page stating that Mortgage Electronic Registration Systems holds only *legal title* [see *TOGETHER WITH* clause on p. 3] [4]

---

[2] *See* Plaintiff's Exhibit 6, Deed of Trust, Adjustable Rate Rider ¶ 4(D) at p. 2 of 5.
[3] *See* Plaintiff's Exhibit 1, Indenture Agreement, § 2.03 at p. 4. [No later than the Closing Date [i.e. December 28, 2006], with respect to the Mortgage Loans (or, with respect to any Eligible Substitute Mortgage Loan, within 5 days after the receipt by the Indenture Trustee thereof and, with respect to any documents received after the Closing Date, promptly thereafter), ..."
[4] *See* Plaintiff Exhibit 5, Deed of Trust.

16. Maryland follows the title theory of mortgages. Under the title theory of mortgages, the deed of trust or a mortgage is also a conveyance of title. The holder of the security instrument is also holding the title until the loan is satisfied.

**Acknowledgment and Signature Required on Note and Deed of Trust**

17. Before a Deed of Trust conveying an interest in land can be recorded, it must first be signed and acknowledged. Md. Code Real Prop. § 4-101 states:

> (1) *Any deed* containing the names of the grantor and grantee, a description of the property sufficient to identify it with reasonable certainty, *and the interest or estate intended to be granted*, is sufficient, *if executed, acknowledged, and, where required, recorded.* [Emphasis added.]

18. Acknowledging a deed on behalf of a corporation cannot be done by just anyone. Md. Code Real Prop. § 1-303 (a) and (b) dictates who can be qualified.

> "(a) *By attorney.* - A corporation may acknowledge by its appointed attorney any document required by law to be acknowledged, and the appointment may be in the document.

> "(b) *By president or vice president.* - The document may be acknowledged by the president or a vice president of the corporation without any appointment."

19. If an acknowledgment is made by an agent such as an attorney, Md. Code Real Prop. § 4-106(d) states that this acknowledgment must either include or be attached to an affidavit. In this affidavit, the agent must attest that he or she has been given the authority to sign on a corporation's behalf. This statute states:

> (d) *Affidavit when made by agent.* If the affidavit is made by an agent, he shall make affidavit *to be contained in, endorsed on, or*

*attached to the mortgage or deed of trust*, that he is the agent of the mortgagee or party secured by the deed of trust, or any one of them, or of the trustee. This affidavit is sufficient proof of agency. ... [Emphasis added].

20. The content required in a corporation's acknowledgment is specified in Md. Code State Government § 19-107. This statute contains recommended forms.

21. Md. Code Real Prop. § 5-103 requires the signature of the party to be charged when land is being conveyed by way of an assignment, grant or surrender.

"No corporeal [i.e. tangible] estate, leasehold or freehold, or incorporeal interest in land *may be assigned, granted, or surrendered, unless it is in writing signed by the party assigning, granting, or surrendering it,* or his agent lawfully authorized by writing, or by act and operation of law." [Emphasis added.]

**Unacknowledged deed is Unrecordable, Incapable of Passing Interest**

22. If a deed is not acknowledged, it is not in recordable form. Md. Code Real Prop. § 4-109 describes the defects that make an instrument unrecordable.

"For the purposes of this section, *the failures in the formal requisites of an instrument are;*
*(1) A defective acknowledgment. ...*
(4) *A lack of or improper acknowledgment or affidavit of consideration, agency, or disbursement.* [Emphasis added.]

23. No deed can pass to a purchaser, if it is not executed and recorded. Md. Code Real Prop. § 3-101(a) states:

(a) *General rule.* Except as otherwise provided in this section, no estate of inheritance or freehold, declaration or limitation of use, estate above seven years, *or deed may pass or take effect unless the deed granting it is executed and recorded.* [Emphasis added.]

24. Five Maryland statutes are devoted directly or indirectly to a deed's acknowledgment. Md. Code Real Prop. § 4-101 requires its presence in a deed. Md. Code Real Prop. § 1-303(a) and (b) describes the qualifications of a person acting on a corporation's behalf by executing an acknowledgment. Md. Code Real Prop. § 4-106(d) requires an affidavit if an acknowledgment is done by an agent. Md. Code State Government § 19-107 dictates the content of this acknowledgment. Two more statutes set out the consequences if these rules are not followed. Md. Code Real Prop. § 4-109 renders a defectively acknowledged deed unrecordable. Md. Code Real Prop. § 3-101(a) declares that no interest in property can pass to a purchaser unless this conveyance is executed with a recordable instrument. Md. Code Real Prop. § 5-103 requires a signature for an assignment, grant or surrender. Without a signature and acknowledgment, the deed of trust is valid as a contract between the parties, but title cannot be passed-on until these defects are cured.

**Authoritative Character of Recorded Records**

25. Montgomery County's Register of Deeds is a place where records are meticulously maintained and given individual care and attention. Any deed of trust is time stamped upon receipt, noting the minute of the day when it is presented. Records are filed in books and organized in indexes. This care and attention is justified because these records are deemed to be authoritative regarding the status of the land records represented. Md. Code Real Prop. § 4-103 states:

10

(a) *In general.* If a deed is executed, acknowledged, and, if required, recorded, the validity of the deed in respect to its execution and delivery by the grantor to the grantee is presumed.

Md. Code, Real Prop. § 7-103 states in pertinent part:

(a) The title to any promissory note, other instrument, or debt secured by a mortgage, both before and after the maturity of the note, other instrument, or debt, *conclusively is presumed to be vested in the person holding the record title to the mortgage. ...*" [Emphasis added.]

26. Consistent with the authoritative character and conclusive reliance placed upon these recordings, similar diligence should be given to their preparation and the formalities which inspire confidence in their authenticity.

**Rights of Parties are rooted in Contracts**

27. Foreclosure is a harsh remedy. In Maryland, this remedy is not judicially supervised. Strict compliance with real estate recordings and conveyance formalities takes on added urgency when a non-judicial foreclosure is permitted.

28. In Maryland, a *deed of trust* and *mortgage* are interchangeable. Md. Code Real Prop. § 1- 101 defines *deed of trust* and *mortgage* as follows.

Md. Code Real Prop. § 1- 101(c) *Deed* includes *any deed, grant, mortgage, deed of trust*, lease, assignment, and release, *pertaining to land* or property *or any interest therein* or appurtenant thereto, including an interest in rents and profits from rents.[Emphasis added.]

Md. Code, Real Prop. § 1- 101(i) *Mortgage* means any mortgage, *including a deed in the nature of mortgage.* [Emphasis added.]

29. A deed of trust is also a contract. Md. Code Comm. Law § 1 – 201 (11) defines *contract* as "the legal obligation which results from the parties' agreement as affected by Titles 1 through 10 of this article [i.e. Comm. Law] *and any other applicable rules of law.*"[Emphasis added.]

30. The term *Party* in Maryland's Real Property code is defined as follows:

> "Md. Code, Real Prop. § 14-201 *Party* means any person who (1) Is a signatory to a contract (2) *Is described in a contract as having a benefit of any provision* of the contract or (3) Owns property subject to the provisions of a contract." [Emphasis added.]

31. The equitable interest in a deed of trust is held by the party that is the beneficiary of the contract.[5] In Plaintiff's deed of trust, American Home Mortgage (i.e. the Lender) is the beneficiary. All principle and interest payments are directed to American Home Mortgage or any purchaser of the Note from them.[6] Mortgage Electronic Registration Systems *is not named* as a recipient of this income.

32. The party entitled to enforce a *power of sale* clause in a deed of trust is specified in Md. Code Real Prop. § 14-204. Under this statute, *only the Party who obtained the lien* has the right to initiate a foreclosure. This statute states:

> "(a) *Manner of enforcement and foreclosure.* A lien may be enforced and foreclosed *by the party who obtained the lien in the same manner, and subject to the same requirements,* as the foreclosure of mortgages or deeds of trust on property in this State containing a power of sale or an assent to a decree." [Emphasis added.]

---

[5] *See* Black's Law Dictionary, online edition, under *equitable interest.*
[6] *See* Plaintiff's Exhibit 4, Deed of Trust ¶ 1 p. 4, ¶ 20, Sale of Note, pp.'s 11-12.

33. In Plaintiff's deed of trust, invoking the *power of sale* clause is held by the lender, American Home Mortgage, because this party is entitled to the income. In ¶ 22, titled *Acceleration Remedies*, Plaintiff's deed of trust states in part:

> "...If the default is not cured on or before the date specified in the notice, *Lender at its option may require immediate payment* in full of all sums secured by this security instrument without further demand *and may invoke the power of sale* and any other remedies permitted by Applicable Law." [7] [Emphasis added.]

34. Mortgage Electronic Registration Systems is also a party with authority to initiate a foreclosure, even though they are not entitled to any income and they did not obtain the lien. This is justified because they are the lender's nominee.

35. *Grant* has been defined by Md. Code Real Prop. § 2- 101, which states:

> "The word *grant,* the phrase *bargain and sell*, in a deed, *or any other words purporting to transfer the whole estate of the grantor, passes to the grantee the whole interest and estate of the grantor* in the land mentioned in the deed unless a limitation or reservation shows, by implication or otherwise, a different interest."[Emphasis added.]

36. Since American Home Mortgage and Mortgage Electronic Registration Systems appear on the deed's face, both companies are *Parties to this contract.*

## Statute of Frauds Applies to this Contract

37. Plaintiff's deed of trust has only been signed by Plaintiff. Maryland's statute of frauds requires the signature of the party to be charged on a sale or transfer of land. Md. Code Real Prop. § 5-104 states:

---

[7] *See* Plaintiff's Exhibit 5, Deed of Trust at ¶ 22, p. 13.

"No action may be brought on any contract for the sale or disposition of land or of any interest in or concerning land unless the contract on which the action is brought, or some memorandum or note of it, *is in writing and signed by the party to be charged or some other person lawfully authorized by him.*" [Emphasis added.]

38. If a lender does not sign a note and deed of trust, it is considered *signed in blank* or made out to bearer. The reason for not signing a note and deed of trust is to facilitate its further transfer to another purchaser.[8] The absence of this signature telegraphs a lender's *specific intent* to become the party to be charged in a future sale, preferably to a Government agency like *Fannie Mae* or *Freddie Mac*.

39. The statute of frauds is designed to serve as a deterrent and, if its rule of law is not followed, the consequence is forfeiture. When a purchaser for value acts upon a deed of trust that is not signed, their contract is rendered unenforceable.

40. Md. Code Real Prop. § 3-101(a) requires an acknowledgment before an instrument is recordable, and serves as a deterrent with a forfeiture consequence. If its rule of law is not followed, any attempt to pass the title of land to a purchaser will be given no effect. Md. Code Real Prop. § 5-103 applies this same rule to an assignment, grant or surrender. The statute of frauds [i.e. Md. Code, Real Prop. § 5-104] is a third avenue for reaching the same end result. If its rule of law is not

---

[8] The most conspicuous prospective purchaser is the Federal National Mortgage Association [a/k/a *Fannie Mae*] and the Federal Home Loan Mortgage Corp. [a/k/a *Freddie Mac*]. These government agencies guarantee payment of principle and interest, but they also require unsigned notes and security instruments.

followed, any sale or transfer to a third party is rendered enforceable. The signature of the party to be charged is a mandatory requirement *of three different statutes*.

41. Before American Home Mortgage can pass on its title and interest in *Plaintiff's Property*, all of the requirements of the Statute of Frauds and all of the recording formalities enumerated above must first be satisfied and *proven to be satisfied by registrations filed at the local Register of Deeds Office*.

42. The purpose served by all of these recording statutes is to promote an open, public and discoverable scheme of maintaining land titles. In this manner, Maryland's code maintains a settled scheme of protections for homeowners and future buyers. If a buyer fails to follow these laws, they do so at their peril.

**American Home Mortgage is not in Good Standing**

43. Two entities bear the name American Home Mortgage. Plaintiff's lender is the first incarnation. On August 6, 2007, this original American Home Mortgage filed for bankruptcy relief.[9] On July 25, 2009, the charter for this original entity was declared forfeited and it ceased to be a functioning legal entity in Maryland.

44. In bankruptcy, its mortgage servicing assets were bought by AH Mortgage Acquisition Co.[10] This company has since morphed *into the present day*

---

[9] *See* In re American Home Mortgage Holdings, Inc., U.S. Bankruptcy Court for the U.S. District of Delaware, Cases # 07-11047 to 07-11054.

[10] This *Asset Purchase Agreement* can be found on the Securities and Exchange Commission search engine by entering into Google *Sec Info American Home*

American Home Mortgage Servicing Inc.  *Debtor companies and their loans were not acquired.* This original company was liquidated in bankruptcy in 2008.

45. Plaintiff's lender has no successors in interest. Claims to the contrary by the second, 2008 version of American Home Mortgage are false and fraudulent.

46. The following facts are irrefutable. (1) Plaintiffs' deed of trust is not signed by the lender. (2) The consequence of this lack of acknowledgment is that this deed of trust is not in recordable form. (3) The legal consequence is that American Home Mortgage cannot pass this title to a purchaser until this deed of trust is signed and properly acknowledged. (4) Since American Home Mortgage withdrew its Maryland charter, it is not a functioning company; it has no board of directors, no officers and no agents that can act on its behalf. (5) As a defunct entity, American Home Mortgage lacks the capacity to cure any of these defects.

**The Securitization Process – Preliminary Transfers**

47. Plaintiff executed a Deed of Trust for $579,500 in favor of American Home Mortgage. In the securitization of this mortgage, American Home Mortgage is known and referred to as the *Loan Originator*.

48. American Home Mortgage assigned Plaintiff's note and deed of trust to an affiliate called *American Home Mortgage Investment Corp.*, which functioned as a holding company for mortgages. *American Home Mortgage Investment Corp.*

*Mortgage Investment Corp 8-K for 9/25/07.* The second option listed will mirror this search. Click on *Ex. 10.1*. This will retrieve the full agreement.

is a party to the Underwriting Agreement, where its name is abbreviated as *American Home*. The Underwriting Agreement states:

> "*American Home* represents and warrants to, and agrees with, the Underwriters that as of the Closing Date the representations and warranties of the Sponsor in Section 3.1 (a) of the Mortgage Loan Purchase Agreement will be true and correct in all material respects."[11]

49. The status of *American Home Mortgage Investment Corp.* with the Maryland Secretary of State is listed as *Pending*. It is not in good standing. Although it now owned Plaintiff's title, you will not find this company in Plaintiff's chain of title at the county Register of Deeds.

50. The transfer from American Home Mortgage to American Home Mortgage Investment Corp. is a change of ownership affecting Plaintiff's title. There is no document memorializing this transaction at the county Register of Deeds. Absence of a document also means that there is no signature from the party to be charged [i.e. American Home Mortgage]. Without the signature of the party to be charged, Md. Code Real Prop. § 5-103 renders this assignment a legal nullity.

51. This change of ownership also suffers from defects present at creation. Absence of an acknowledgment and its concomitant signature violates Md. Code, Real Prop. § 4-101 [acknowledgment in deed required], Md. Code Real Prop. § 1-303(a) and (b) and Md. Code Real Prop. § 4-106(d) [specifying qualified signers and proof of appointment], Md. Code Real Prop. § 4-109 [unacknowledged deed is

---

[11] Plaintiff Exhibit 3, Underwriting Agreement, ¶ (q), subparagraph 1.2, at p. 5.

unrecordable], and Md. Code Real Prop. § 3-101(a) [no title can pass until deed is executed and recorded]. This first transfer from American Home Mortgage to American Home Mortgage Investment Corp. is void for these additional reasons.

52. After this first transaction, a second transfer of ownership occurred. American Home Mortgage Investment Corp. assigned Plaintiff's deed to another affiliate, *American Home Mortgage Acceptance, Inc*. This entity's status with Maryland's Secretary of State is also Pending. *It is also not in good standing.*

53. In the transfer from American Home Mortgage Investment Corp. to American Home Mortgage Acceptance, Inc., there is no memorializing document on file with the Register of Deeds and of course, no signature and acknowledgment from the party to be charged (i.e. American Home Mortgage Investment Corp.) Pursuant to Md. Code Real Prop. § 5-103, this transfer is another legal nullity.

54. In addition to this defect in the transaction between these parties, this change of ownership suffers from all of the defects present at conception. The signature and acknowledgment required by Md. Code Real Prop. § 4-101 does not exist. Suitable proof of authority for executing an acknowledgment, required by Md. Code Real Prop. § 1-303(a) and (b), does not exist. If these formalities are not observed, the conveying instrument is not in recordable form and, pursuant to Md. Code Real Prop. § 3-101(a), *no title can pass until these defects are cured with a recordable instrument.* This is a second off-record transaction.

**First Transaction Agreement -- Mortgage Loan Purchase Agreement**

55. The third transfer of ownership and the first transaction inside the conversion of mortgages into collateral for asset-backed securities is called a *Mortgage Loan Purchase Agreement*. This is a sale -- not an assignment -- between American Home Mortgage Acceptance Corp., known as the *Sponsor* as well as the seller, and American Home Mortgage Securities L.L.C., which is referred to as the *Company* in the Underwriter Agreement as well as being the buyer in this transaction. The Underwriting Agreement states in pertinent part:

> "The mortgage loans included in the Trust Estate *will be sold* by American Home Mortgage Acceptance, Inc. (the *"Sponsor"*) *to the Company* [i.e. American Home Mortgage Securities LLC] pursuant to a Mortgage Loan Purchase Agreement dated as of December 28, 2006 (the *"Mortgage Loan Purchase Agreement"*), between the Sponsor [i.e. American Home Mortgage Acceptance, Inc.] and the Company [i.e. American Home Mortgage Securities LLC.]..." [12] [Emphasis added.]

56. There is nothing on file with the Register of Deeds in Plaintiff's chain of title attesting to a sale of her mortgage [or any block of mortgages] by American Home Mortgage Acceptance, Inc. to American Home Mortgage Securities L.L.C.

57. American Home Mortgage Securities L.L.C. never applied for a charter to do business in Maryland. Like the others, it is also *not in good standing.*

58. Md. Code Real Prop. § 3-101(a) states that any attempt to pass a title will be given no effect if the deed of trust is not executed and recorded. This transaction

---

[12] See Plaintiff's Exhibit 3, Underwriting Agreement, at p. 3.

is not executed. The statue of frauds [Md. Code Real Prop. § 5-104] states that a writing memorializing the sale of land must be signed by the party to be charged. There is no writing or signature by the party to be charged [i.e. American Home Mortgage Acceptance, Inc.] on file with the county register of deeds. The absence of this signature renders this transaction unenforceable *by two statutes*. This transfer is another legal nullity.

59. In addition to defects between parties, this change of ownership suffers from problems present at conception. There is no acknowledgment by the loan Originator. We do not know if the person acting on the corporation's behalf had the authority to do so. These defects render this instrument unrecordable. Md. Code Real Prop. § 4-101, § 1-303(a) and (b) and § 4-109 are all violated.

**Trust Agreement and Indenture Agreement**

60. The second transaction inside the securitization transaction [fourth change of ownership] occurs between American Home Mortgage Securities LLC, which is now referred to as the *Depositor – and not the Company*, its name in the Underwriting Agreement – and two banks, Wilmington Trust Company referred to as *Owner Trustee*, and Wells Fargo Bank referred to as *Securities Administrator*. The first purpose served by the Trust Agreement is to create a new entity, *American Home Mortgage Investment Trust 2006-3*. Once this entity is created, the role of Wilmington Trust Company morphs into *American Home Mortgage*

*Investment Trust 2006-3*, and its business is conducted at the address of Wilmington Trust Company *acting as* the Trust. This Trust Agreement states:

> "The trust created hereby (the *"Trust"*) shall be known as *"American Home Mortgage Investment Trust 2006-3"*, in which name the Owner Trustee *may conduct the business of the Trust*, make and execute contracts and other instruments on behalf of the Trust and sue and be sued." [13] [Emphasis added.]

61. The fifth change of ownership occurs between American Home Mortgage Securities LLC [i.e. the *Depositor*] and American Home Mortgage Investment Trust 2006-3, which is also known as the *Issuer*. This agreement states:

> "(a) Effective as of the date hereof, the Depositor [i.e. American Home Mortgage Securities LLC] *does hereby assign, transfer, and otherwise convey to, and deposit with,* the Trust [i.e. American Home Mortgage Investment Trust 2006-3], until this Agreement terminates pursuant to Section 8.01, the entire Trust Estate, *such conveyance to be made in exchange for the Notes and the Certificate.* Such assignment includes, without limitation, all amounts payable to and all rights of the holder of the Collateral pursuant to this Agreement.

> "The conveyance of the Collateral and all other assets constituting the Trust Estate by the Depositor [i.e. American Home Mortgage Securities LLC] as contemplated hereby *is absolute and is intended by the parties to constitute a sale of the Collateral and all other assets constituting the Trust Estate by the Depositor to the Trust."* [14] [Emphasis added.]

62. Once this transfer takes place, the original lender [i.e. American Home Mortgage] *is left holding nothing.* Md. Code Real Prop. § 2-101 states that words such as *sale* are assumed to transfer *everything*, if nothing has been held back.

---

[13] *See* Plaintiff's Exhibit 2, Trust Agreement, § 2.01 at p. 4.
[14] *See* Plaintiff's Exhibit 2, Trust Agreement, § 2.12 at pp.'s 5-6.

63. At this stage in the transaction, mortgages are enlisted as collateral. American Home Mortgage Investment Trust 2006-3 is the entity issuing *mortgage backed Notes*. Before it can issue *mortgage backed Notes*, it is taking absolute title to the mortgages. This is being done for the comfort level of investors. For the train wreck that has taken place since loans were originated, there is denial.

64. American Home Mortgage Investment Trust 2006-3 has never applied for a Maryland charter. It has no standing.

65. Nothing is filed with the Register of Deeds attesting to a sale of Plaintiff's deed of trust by American Home Mortgage Securities LLC to American Home Mortgage Investment Trust 2006-3. This is a fourth off-record transaction..

66. Because the foundation document is not executed, it is not recordable. Md. Code Real Prop. § 3-101(a) states that only an executed and recorded deed can pass title to a purchaser. The statue of frauds [Md. Code Real Prop. § 5-104] states that a writing memorializing the sale of land must be signed by the party to be charged. There is no writing or signature by the party to be charged [i.e. American Home Mortgage Securities L.L.C.] on file with the register of deeds. The absence of this signature *violates two statutes*, Md. Code Real Prop. § 3-101(a) and Md. Code Real Prop. § 5-104. This transfer is another legal nullity.

67. This change of ownership also suffers from problems present at conception. There is no acknowledgment by the Originator of this loan; we do not

22

know if the person acting on the corporation's behalf had the authority to do so and, these defects render Plaintiff's deed of trust unrecordable, violating Md. Code Real Prop. § 4-101, § 1-303(a) and (b), and § 4-109.

68. The fifth change of ownership [fourth inside the securitization process] takes place between American Home Mortgage Investment Trust 2006-3 and Deutsche Bank, the Indenture Trustee. This is where mortgages become bonded to the Notes. The Indenture Agreement states:

> "The Issuing Entity [i.e. American Home Mortgage Investment Trust 2006-3] *hereby Grants* to the Indenture Trustee [i.e. Deutsche Bank] at the Closing Date, as trustee *for the benefit of the Holders of the Notes, all of the Issuing Entity's right, title and interest in and to,* whether now existing or hereafter created, *(a) the Mortgage Loans, Eligible Substitute Mortgage Loans and the proceeds thereof and all rights under the Related Documents; ...*" [15]   [Emphasis added.]

> "...and *all proceeds of every kind and nature whatsoever* in respect of, any or all of the foregoing and all payments on or under, and all proceeds of every kind and nature whatsoever in the conversion thereof, voluntary or involuntary, into cash or other liquid property, all cash proceeds, accounts, accounts receivable, notes, drafts, acceptances, checks, deposit accounts, *rights to payment of any and every kind, and other forms of obligations and receivables, instruments and other property which at any time constitute all or part of or are included in the proceeds of any of the foregoing* (collectively, the *"Trust Estate"* or the *"Collateral"*)." [16]

69. Md. Code Real Prop. § 2-101 defines *grant* in a deed as transferring *the whole estate* of the grantor to the grantee. To leave no doubt about the intent of the

---

[15] *See* Plaintiff's Exhibit 1, Indenture Agreement, Granting Clause at p. 3.
[16] *See* Plaintiff's Exhibit 1, Indenture Agreement, Granting Clause at p. 3.

parties to this transaction, this conveyance includes *the right to any and every kind of payment* and *other forms of obligations and receivables*. This language eviscerates the beneficial interest of Mortgage Electronic Registration Systems. Now, this company is left *holding nothing*. No beneficial interest can survive such an all-inclusive grant.

70. Plaintiff's chain of title with the Register of Deeds does not include a sale by American Home Mortgage Investment Trust 2006-3 to Deutsche Bank.

71. Plaintiff's deed of trust is not executed and is therefore not recordable. Md. Code Real Prop. § 3-101(a) states that an attempt to pass on a title with an unexecuted deed will be given no effect. The statue of frauds [Md. Code Real Prop. § 5-104] states that a writing memorializing the sale of land must be signed by the party to be charged. There is no writing or signature by the party to be charged [i.e. American Home Mortgage Investment Trust 2006-3] on file with the county register of deeds. The absence of this signature *violates two statutes*, Md. Code Real Prop. § 3-101(a) and Md. Code Real Prop. § 5-104.

72. This change of ownership also suffers from all of the problems present at conception. There is no acknowledgment by the Originator of this loan. We do not know if the person acting on the corporation's behalf had the authority to do so. These defects render Plaintiff's deed of trust unrecordable, violating Md. Code Real Prop. § 4-101, § 1-303(a) and (b) and § 4-109.

73. Physical possession of Plaintiffs' deed of trust is transferred from American Home Mortgage Investment Trust 2006-3 to Deutsche Bank, and *long term custody* remains there. The Indenture Agreement states in pertinent part:

"(a) The Indenture Trustee [i.e. Deutsche Bank] shall acknowledge *receipt of, ... the documents* (or certified copies thereof) referred to in Section 2.1(b) *of the Mortgage Loan Purchase Agreement*, and to declare that *it holds and will continue to hold those documents* and any amendments, replacements or supplements thereto and all other assets of the Trust Estate, *in trust for the use and benefit of all present and future Holders of the Notes*." [17] [Emphasis added.]

74. Plaintiff's deed of trust is signed in blank, making it a bearer instrument. Md. Code Comm. Law § 3-205 [U.C.C. § 3 – 205] states that physical possession is an essential element for proving ownership of a bearer instrument. Md. Code Real Prop. § 3-102(a)(1) states that any instrument affecting property *may be* recorded. Since possession of a bearer instrument is an essential element for proving ownership, transferring this document to Deutsche Bank for *long term safekeeping* qualifies as a recordable transaction under Md. Code Real Prop. § 3-102(a)(1). But Deutsche Bank did not record this transaction. Records at the Register of Deeds maintain that American Home Mortgage holds Plaintiff's deed.

75. In the Indenture Agreement, mortgages are assigned to asset backed Notes. Plaintiff's mortgage becomes part of a pool of mortgages. This pool of mortgages becomes collateral for a species of mortgage backed Notes issued by

---

[17] See Plaintiff's Exhibit 1, Indenture Agreement, § 2.03 at p. 4.

American Home Mortgage Investment Trust 2006-3, alter ego of Wilmington Trust Bank. No single investor owns Plaintiff's mortgage. All investors purchasing this class of *mortgage backed notes* own a pro rata share of every mortgage, and they are entitled to a pro rata share of its income. Plaintiff's deed of trust *has many beneficial owners.* The Investment Certificate states:

> "All payments made by the Issuing Entity [i.e. American Home Mortgage Investment Trust 2006-3] with respect to this Note shall be equal to this Note's *pro rata share of the aggregate payments* on all Class [__-A-__] Notes as described above, ..."[18] [Emphasis added.] .

76. After collateral has been assigned to investor Notes, the work of the Issuer, American Home Mortgage Investment Trust 2006-3, is done. Since Deutsche Bank has no further reason for holding the equitable title of these mortgages, the Indenture Agreement transfers this interest back to the *Depositor,* American Home Mortgage Securities LLC. The Indenture Agreement states:

> "*This Indenture shall cease to be of further effect with respect to the Notes* ... and the Indenture Trustee, on demand of and at the expense of the Issuing Entity, shall execute proper instruments acknowledging satisfaction and discharge of this Indenture with respect to the Notes and shall release and deliver the Collateral to or upon the Issuing Entity Request ..." [19]

**Underwriting Agreement and *Depository Trust and Clearing Corp.***

77. Mortgage backed notes are now ready to be distributed. The sixth change of ownership is between American Home Mortgage Securities LLC, referred to as

---

[18] See Plaintiff's Exhibit 4, Investment Certificate at p. 3.
[19] See Plaintiff's Exhibit 1, Indenture Agreement, § 4.10 at pp.'s 13-14.

the *Company* and Bear Sterns, Greenwich Capital, Lehman Brothers and ABN AMRO, referred to as *Underwriters*. The principal of all mortgages equals $1,669,430,000 [one billion, six hundred sixty-nine million, four hundred thirty thousand dollars.] There are 17 classes of Notes supported by 17 mortgage pools. Dividing this principal by the minimum $100,000 investment gives us 16,694 investors. If the dollar value of these mortgage pools is equal, *there would be 982 [16,694 divided by 17] beneficial owners of Plaintiff's deed of trust.*

78. Title to these mortgages *will not transfer* from American Home Mortgage Securities LLC to Bear Sterns, Greenwich Capital, Lehman Brothers and ABN AMRO *and then* to investors. Instead, each underwriter is referenced as *Depository Participants*, meaning that they all have accounts with Depository Trust and Clearing Corporation [hereafter *Depository Trust*]. Title for these mortgages will transfer from American Home Mortgage Securities LLC directly to *Depository Trust*. The Underwriting Agreement and Indenture Agreement state, respectively:

> "Delivery of the Underwritten Notes shall be made to the Underwriters through the DTC [i.e. *Depository Trust and Clearing House*]."[20]
>
> * * * *
>
> "Each distribution with respect to a Book-Entry Note *shall be paid to the Depository, as Holder thereof,* and the *Depository shall be responsible for crediting the amount of such distribution to the*

---

[20] Plaintiff Exhibit 3, Underwriting Agreement, Underwriter Covenants (a)(3) p. 5.

accounts of its Depository Participants in accordance with its normal procedures."[21] [Emphasis added.]

79. *Depository Trust* serves as a clearing house, linking sources of funds to distribution networks. It is also known as *DTC*. Accounts are held in the name of a pseudonym *Cede & Co*. The Indenture Agreement states:

> "The *Indenture Trustee* [i.e. Deutsche Bank] and the Securities Administrator [i.e. Wells Fargo Bank] *may for all purposes* (including the making of payments due on the Notes) *deal with the Depository as the authorized representative of the Beneficial Owners* with respect to the Book-Entry Notes *for the purposes of exercising the rights of Holders of the Notes hereunder*."[22] [Emphasis added.]

> "(iv) the rights of Beneficial Owners *shall be exercised only through the Depository* and *shall be limited to those established by law and agreements between such Owners of Notes and the Depository* and/or the Depository Participants."[23]  [Emphasis added.]

80. Subjugation of the rights of investors to *Depository Trust* is branded on each Note. Depository Trust *retains an interest* in each Note issued. Mortgage Electronic Registration Systems *has no beneficial* interest. It is given *nothing*.

> "Unless this note is presented by an authorized representative of the Depository Trust Company ...for registration of transfer, exchange or payment, *and any note issued is registered in the name of Cede & Co. .... and any payment is made to Cede & Co.* ... any transfer, pledge or other use hereof for value or otherwise by or to any person is wrongful inasmuch as the *registered owner hereof, Cede &Co., has an interest herein*." [24] [Emphasis added.]

---

[21] Plaintiffs Exhibit 1, Indenture Agreement, § 3.10(c) at p. 6.

[22] See Plaintiff Exhibit 1, Indenture Agreement, § 4.01 at p. 11.

[23] Plaintiffs Exhibit 1, Indenture Agreement, § 4.06 (iv) at p. 13.

[24] Plaintiff's Exhibit 4, Investment Certificate, at p. 2. Type in original is in bold face and all caps. This type is modified to normal print, 14 point times new roman.

81. All of the problems discussed in the first six transactions apply to this seventh change of owners. Absence of the signature for the person to be charged, in this case American Home Mortgage Securities LLC *again*, violates Md. Code Real Prop. § 3-101(a) and Md. Code Real Prop. § 5-104. Problems at conception plague this transfer. Absence of a fully executed deed of trust, no documented authority for acting on a corporation's behalf and failing to file a recordable instrument violate Md. Code Real Prop. § 4-101, § 1-303(a) and (b) and § 4-109. But this change of ownership is different. This is where a mortgage ceases to be *just a mortgage* and becomes converted and treated instead *as a commodity*.

82. Unlike American Home Mortgage, American Home Mortgage Investment Corp., American Home Mortgage Securities LLC, American Home Mortgage Acceptance Inc., American Home Mortgage Investment Trust 2006-3 and Deutsche Bank, *Depository Trust* does not possess human intelligence. It possesses artificially created memory and its actions are driven and limited by computer programs. It can accept a mortgage backed security from Deutsche Bank, scan its data base and tell you in nanoseconds where this instrument is to be deposited with Bear Stearns [i.e. one of the underwriters] for a Bear Stearns' client. But if you ask Depository Trust if it will certify the legality, validity and enforceability of Plaintiff's deed of trust as well as the other mortgages making up

29

this pool of collateral, it will not just be lacking an answer; it will have no clue as to the question that is being asked.

83. If you check Plaintiff's chain of title in Montgomery County, *Depository Trust* will not be listed as the holder of this deed of trust, even though the Indenture Agreement requires it to be held there and nowhere else.

84. The seventh change of ownership occurs inside the *Depository Trust* computer. This transfer is the first of all future transfers. Computers are interacting with other computers. As in any artificially created intelligence environment, *Depository Trust* deals with identifying *tags*, not names. Investors are listed under its pseudonym *Cede & Co.*, followed by a tag with numbers and letters that can only be deciphered by compatible computers. Even after the equitable interest in Plaintiffs' loan has reached the end of the securitization process, we still do not know the name of the other principal. The Underwriting Agreement states:

> "Such Underwriter hereby acknowledges that each Underwritten Certificate is to be maintained on the book-entry records of The Depository Trust Company ("DTC"). Investors may hold the beneficial interests in minimum denominations of $100,000...".[25]

**Investors Own Plaintiff's Deed of Trust**

85. These investments are referred to as *mortgage backed notes*. Owners are referred to as *Noteholders*.   The Indenture Agreement leaves no doubt that Noteholders are beneficiaries of the deeds of trust and mortgages.

---

[25] See Plaintiff Exhibit 3, Underwriting Agreement, Underwriter Covenants, p. 5.

"Section 4.04 *Persons Deemed Owners.* Prior to due presentment for registration of transfer of any Note, the Issuing Entity[ i.e. American Home Mortgage Investment Trust 2006-3] , the Indenture Trustee [i.e. Deutsche Bank], the Paying Agent and any agent of the Issuing Entity or the Indenture Trustee or the Paying Agent *may treat the Person in whose name any Note is registered ... as the owner of such Note for the purpose of receiving payments of principal of and interest, if any, on such Note and for all other purposes whatsoever, ...."* [26] [Emphasis added.]

\* \* \* \*

"Section 5.07 *Unconditional. Rights of Noteholders To Receive Principal and Interest.* Notwithstanding any other provisions in this Indenture, *the Holder of any Note shall have the right, which is absolute and unconditional, to receive payment of the principal of and interest, if any, on such Note on or after the respective due dates thereof* expressed in such Note or in this Indenture and to institute suit for the enforcement of any such payment, *and such right shall not be impaired without the consent of such Holder.*" [27] [Emphasis added.]

86. In Plaintiff's deed of trust, the Party entitled to the income is the Lender, or their successor in interest if the deed of trust should be sold. [28] This deed of trust was sold and investors are now entitled to the principal and interest paid by Plaintiff, making them the successor in interest to American Home Mortgage.

87. ¶ 22 of Plaintiff's deed of trust states that the party entitled to enforce the *power of sale* is the party entitled to the income. Today, the parties entitled to the income and, therefore, the only parties authorized to enforce the power of sale clause are hundreds of investors holding a pro rata share of Plaintiff's deed of trust.

---

[26] Plaintiff Exhibit 1, Indenture Agreement, § 4.04 at p. 12.
[27] Plaintiff Exhibit 1, Indenture Agreement, § 5.07 at pp.'s 15-16.
[28] Plaintiff Exhibit 5, Deed of Trust, ¶ 1 p. 4, ¶ 20, Sale of Note, pp.'s 11-12.

88. Md. Code Real Prop. § 14-204 states that the party obtaining the lien [i.e. American Home Mortgage] has the right to initiate a foreclosure. This statute further requires that it must do so *in the same manner, and subject to the same requirements* that are imposed upon the foreclosure of mortgages.

89. From two propositions of fact [i.e. under the contract, investors are entitled to the income and this also gives them exclusive authority to initiate foreclosure], reinforced by a proposition of law [per Md. Code Real Prop. § 14-204 only the party obtaining a lien can initiate foreclosure], the following corollary can be drawn. Investors [i.e. Noteholders], hundreds of them, are the *current beneficiaries* and they are also the only parties entitled to initiate foreclosure.

90. When American Home Mortgage Securities LLC assigned, transferred and other wise conveyed all rights as holder of the collateral [the first time] *in exchange for the Notes*, the title to this real estate became inextricably intertwined with *mortgage backed notes* – hence the basis for its name. Since investors also owned real estate, one condition imposed upon investors for purchasing mortgage backed notes was United States citizenship.

> "No Person shall become a Certificateholder until it shall establish its non-foreign status by submitting to the Certificate Paying Agent an IRS Form W-9 and the Certificate of Non-Foreign Status set forth in Exhibit D hereto." [29]

---

[29] See Plaintiff's Exhibit 2, Trust Agreement, § 3.05 at p. 9.

## Off-Record Changes of Owners on Secondary Mortgage Market

91. Seven changes of ownership have been tracked through the Securities and Exchange Commission search engine. Equitable title to Plaintiff's Property is now held by hundreds of investors on the secondary mortgage market, where ownership interests can be purchased and sold at any time.

92. On the secondary mortgage market, Plaintiff's Property can change hands *hundreds of times* among these investors during intervening years. These are all off-record and unenforceable sales. On the secondary mortgage market, ownership *cannot be tracked*. Disclosure is veiled by the moniker *Cede & Co*. Confidentiality is protected by criminal statutes. .

93. On October 2, 2010, Old Republic National Title Insurance announced that it would temporarily stop writing title insurance on properties foreclosed by J.P. Morgan Chase and GMAC Mortgage because of faulty affidavits. The problem · of faulty affidavits pales in comparison to at least seven off-record changes of ownership that can be tracked; and the possibility of hundreds of additional off-record changes of ownership which cannot be tracked in any public data base. As one Land Court decision in Massachusetts commented;

> [a bidder at a foreclosure] "does not expect to purchase the right to a potential lawsuit which will only entitle him or her to actually obtain the property *if the lawsuit is successful*." [30] [Emphasis added.]

---

[30] *See* United States Bank Nat'l Ass'n v. Ibanez, 17 LCR 679, 687(Mass. Land Ct. 2009) [hereafter *Ibanez*]. This decision considered a mortgage foreclosure sale

94. For failing to follow their own commands, Defendants have no one to blame but themselves for their untenable and precarious legal difficulties.

**To Enforce Bearer Instruments, *Rightful Possession* Must be established**

95. Ownership rights in instruments relating to land are also subject to principles of property law, independent of Article 3 of the Uniform Commercial Code. Because of special safeguards in the form of recording statutes established to protect interests in property, the owner must prove *rightful possession*. U.C.C. Official Comment 2 for Md. Code Comm. Law § 3-203(b) [U.C.C. § 3-203] states:

> "Because the transferee's rights are derivative of the transferor's right's those rights must be proved."

96. For a mortgage, there is no presumption under Md. Code Comm. Law § 3-308 [U.C.C. 3-308] that a transferee is entitled to payment simply by producing the instrument. Official Comment 2 for Md. Code Comm. Law § 3-308 states:

> "the transferee must account for possession of the unindorsed instrument by proving the transaction through which the transferee acquired it."

97. This fact is reinforced by a functionally equivalent statute contained in Maryland's real property chapter. Md. Code Real Prop. § 2-103 states:

> "Every valid assignment of a mortgage is sufficient *to grant to the assignee every right which the assignor possessed* under the mortgage at the time of the assignment." [Emphasis added.]

---

conducted by an entity that had no recorded interest in the property when the foreclosure sale was conducted. After obtaining title at a sheriff's auction, the foreclosing party could not obtain title insurance. After walking through the securitization process, *quiet title relief was denied.*

98. In a non-judicial foreclosure, where a sale is not conducted under a court's auspices, warranties certifying a title's legality, validity and enforceability are especially important and must accompany any conveyance. Without these warranties, foreclosure can be triggered by an entity positioned by a spurious recording, capable of creating the illusion of acting for the real party in interest but in fact, this interest is illusory. Under close scrutiny, this entity is unable to provide any of these warranties. The consequence is that the property bought at auction will not be able to acquire title insurance and become marketable.

99. Before a mortgagee can enforce Plaintiffs' note, they must follow the procedure set forth in Md. Code Real Prop. § 4-101[every deed of trust executed by a corporation must have an acknowledgment], Md. Code Real Prop. § 1-303 (a) and (b) [the person acting on a corporation's behalf has been delegated this authority], Md. Code Real Prop. § 4-109 [the acknowledgment does not contain defects making it unrecordable], thereby overcoming the mandate in Md. Code Real Prop. § 3-101(a) [requiring a recordable instrument before title to land can transfer to a new party]. It must also contain the signature of the party to be charged on an assignment or grant [as required by Md. Code Real Prop. § 5-103] and upon a sale [as required by the statute of frauds, Md. Code Real Prop. § 5-104]. For every holder of Plaintiff's deed of trust, endorsements must be obtained from an authorized officer of their assignor and, after recording this instrument,

35

this procedure must be repeated until every prior unrecorded off-record transaction affecting Plaintiff's deed of trust has been reconstructed and recorded pursuant to these formalities, culminating in a majority of current investors holding a pro rata share of Plaintiff's deed of trust. This is the road to be traveled in reverse, so that a mortgage can once again return to its roots and become *just a mortgage*.

100. Proving rightful possession is compounded by Depository Trust acting as transferor for every Noteholder, and retaining an interest in every Note. Making warranties is a task that this entity was never intended to do. Not now. Not ever.

101. Only when Plaintiff's deed of trust is *acknowledged and recorded* in this manner, will the current owner be in a position to prove that they are also the *rightful owner*. Given the fact that *Depository Trust* holds an interest in every outstanding Note in Plaintiff's chain of title, and no such signatures and assurances as to the legality, validity and enforceability of this deed of trust can ever be expected from this entity, the obstacles to be overcome may be insurmountable. But it was not Plaintiff's idea to convert this mortgage into a commodity.

**Investor Relations with Deutsche Bank and Depository Trust**

102. Deutsche Bank's responsibilities as Indenture Trustee *do not extend* to individual investors. Instead, Deutsche Bank *may for all purposes* deal with Depository Trust as the *authorized representative for all beneficial owners*.[31]

---

[31] See Plaintiff Exhibit 1, Indenture Agreement, § 4.01 at p. 11.

103. Investors have no right to engage Deutsche Bank. The rights of investors can only be exercised through Depository Trust and, the only rights that an investor can exercise with Depository Trust *are such laws and agreements that exist between owners of notes, Depository Trust* and investment firms.[32]

104. Among the laws and agreements existing between *Depository Trust,* its Depository Participants (i.e. underwriters) and investors, you will not find the Real Property statutes of Maryland governing deeds of trust and their enforcement.

105. One property of a commodity is that the physical attributes of a unit are interchangeable with other units, such that individuality is erased. Forcing investors to exercise rights *only through* the artificial intelligence of Depository Trust, and limiting these rights to rules already stored in its memory, is simply the normal, logical progression of events necessitated by dealings with commodities.

106. While this may be totally normal for a commodity, it is highly unusual and more than a little inconvenient when dealing with *a mortgage* and homeowner.

107. At the end of the securitization process, Deutsche Bank holds the physical deed of trust. Equitable interest is held by *hundreds of investors.* These investors are entitled to exercise *no rights* under these agreements. Deutsche Bank owes no duty to act on behalf of any Noteholder. One holder of Plaintiffs' deed of trust is Depository Trust, an entity that possesses only situation-specific and

---

[32] Plaintiffs Exhibit 1, Indenture Agreement, § 4.06 (iv) at p. 13.

artificially-created intelligence. Depository Trust will not make representations to a transferee as to the legality, validity and enforceability of this deed of trust. Every current beneficial owner must necessarily look to Depository Trust *and no one else* as their transferor. The rights of these investors [i.e. Noteholders] can never be greater than what this artificially created entity can convey; which is to say that the legality, validity and enforceability of these instruments will never be certified. .*This is the suit of clothes worn by Plaintiff's deed of trust as a commodity*.

### Securitization Documents Require Maintaining Recordings

108. The Indenture Agreement imposes a mandatory duty to record deeds of trust and mortgages, thereby perfecting its security interest in the collateral.

> "The Issuing Entity [i.e. American Home Mortgage Investment Trust 2006-3] has caused or will have caused, *within ten days* of the Closing Date [i.e. January 7, 2007], *the filing of all appropriate financing statements in the proper filing office in the appropriate jurisdictions under applicable law in order to perfect the security interest in all Collateral* granted to the Indenture Trustee hereunder in which a security interest may be perfected by filing."[33] [Emphasis added.]

109. In addition to imposing an immediate duty to do these recordings, the Indenture Agreement further imposes a continuing duty upon the Issuer, *American Home Mortgage Investment Trust 2006-3*, to record and maintain the lien and first priority security interest in this collateral. This Indenture Agreement states:

> "(b) *On or before April 15 in each calendar year*, beginning in 2007, the Issuing Entity [American Home Mortgage Investment Trust

---

[33] See Plaintiff Exhibit 1, Indenture Agreement, § 3.37 (d) at p. 11.

2006-3] shall furnish to the Indenture Trustee [Deutsche Bank] an Opinion of Counsel at the expense of the Issuing Entity either stating that, in the opinion of such counsel, *such action has been taken with respect to the recording, filing, re-recording and refilling of this Indenture, any indentures supplemental hereto* and any other requisite documents and with respect to the execution and filing of any financing statements and continuation statements *as is necessary to maintain the lien and first priority security interest in the Collateral* and reciting the details of such action ..." [34] [Emphasis added.]

110. Despite this self imposed command, Defendants chose to ignore and disrespect Maryland's recording statutes. The consequence of this course of action is that these unrecorded interests are now vulnerable to the forfeiture provisions of Md. Code Real Prop. § 3-101(a) and Md. Code Real Prop. § 5-104.

**In Maryland, Equitable and Legal Ownership cannot be separated**

111. Under the terms of these securitization agreements, the note and deed of trust have physically separated. Deutsche Bank holds possession of this bearer instrument. In Maryland, it is well settled that a note cannot be separated from its security instrument.[35] When these two instruments are separated, a legal fiction is created which maintains that they are still together.

112. By operation of law, both the equitable *and legal interest* of Plaintiff's deed of trust merged and they are now held by the investor, and by no one else.

---

[34] See Plaintiff Exhibit 1, Indenture Agreement, § 3.12(b) at pp.'s 7-8.
[35] *See* Le Brun v. Prosise, 197 Md. 466, 474-475 (Md. 1951). *See also* Carpenter v. Logan, 83 U.S. 271, 274 (1872).

**False and Fraudulent Representations at Local Recorder's Office**

113. Records at the county Register of Deeds maintain that American Home Mortgage still holds and owns Plaintiff's deed of trust. It is a document-grounded, situation-specific fact that American Home Mortgage relinquished its entire interest in Plaintiffs' deed of trust in late December of 2006. This record is false.

114. From early January of 2007 up to the present time, American Home Mortgage and its successors in interest have allowed this false record to remain in a place where records are not just relied upon; two Maryland statutes [i.e. Md. Code Real Prop. § 4-103 and Md. Code Real Prop. § 7-103] create a presumption of authenticity. Allowing this false record to remain in this place *where reliance is conferred by statute* elevates this false statement to an act of fraud.

115. Today, there are hundreds of beneficial owners of Plaintiff's title. These true owners are not just missing from the county Register of Deeds office. These beneficial owners will not be found *in any public data base.* Instead, records at this office reflect the names of parties holding no interest of any kind.

116. The current chain of title for Plaintiffs' Property has been compromised to the point that the public record is a materially manipulated and *ingeniously constructed* subterfuge established to project the appearance of legitimacy, while actually camouflaging numerous off-record transactions.

117. In addition to concealing off-record transactions, it is also a stratagem for evading *at least five* Maryland statutes relating to recordings and conveyances, and a sixth statute under the Uniform Commercial Code which requires proof of *rightful ownership* before allowing an enforcement action to proceed.

118. The true purpose served by Mortgage Electronic Registration Systems has nothing to do with the contract. Mortgage Electronic Registration Systems only *surfaces* at foreclosure. More fundamentally, the utility of the county recorder has been degraded to the point that it serves *no other purpose* but to act as a resting place for a Mortgage Electronic Registration Systems filing, which in turn has been positioned to advance just one purpose – to facilitate foreclosure. The practical effect is to enlist the Register of Deeds as an unknowing participant in this fraud.

119. If a foreclosure should be commenced under a power of sale clause based upon current recordings, the Trustee would conduct a mortgage foreclosure under the auspices of two entities (i.e. American Home Mortgage and Mortgage Electronic Registration Systems, Inc.) having no current interest in the property, and with no entitlement under the *contract* to bring this foreclosure action.

**Chicanery by American Home Mortgage and MERS**

120. In American Home Mortgage's recorded instrument, reference is made to *Mortgage Electronic Registration Systems*. According to terms in the deed of trust, Mortgage Electronic Registration Systems is given the power to foreclose.

"Borrower understands and agrees that MERS (i.e. Mortgage Electronic Registration Systems, Inc.) holds only legal title to the interests granted by the borrower in this Security Instrument, but, *if necessary to comply with law or custom. MERS* (as nominee for Lender and for Lender's successors and assigns) *has the right: to exercise any and all of those interests including the right to foreclose and sell the property*; ..." [*See* Deed of Trust, TOGETHER WITH clause on p. 3]. [Emphasis added.]

121. In the first place, American Home Mortgage *has no successors and assigns* because their deed of trust is not in recordable form. Pursuant to Md. Code Real Prop. § 3-101 (a) and Md. Code Real Prop. § 5-104, no title from a corporation can pass until formalities set forth in Md. Code Real Prop. § 4-101, § 1-303(a) and (b) and § 4-109 are observed. Plaintiff's title is still parked with American Home Mortgage, a defunct corporation with no capacity to do anything.

122. Mortgage Electronic Registration Systems cannot act as nominee for American Home Mortgage. After the transfer between American Home Mortgage Securities LLC and American Home Mortgage Investment Trust 2006-3, American Home Mortgage was left holding nothing. When American Home Mortgage ceased to be a principal, no legitimate purpose can be served by a nominee. There is nothing left for anyone, principal or nominee, to do.

123. Naming Mortgage Electronic Registration Systems as a beneficiary is a self-serving and unsubstantiated assertion. No document has been attached to the deed of trust, formalizing the appointment of Mortgage Electronic Registration Systems as the Lender's beneficiary. Since this covenant affects an interest in land,

the statute of frauds requires such a writing signed by the party to be charged [i.e. American Home Mortgage].

124. Mortgage Electronic Registration Systems is not a beneficiary of the Lender's successors and assigns *on the contract.* On each mortgage backed Note, an interest is reserved for Depository Trust. If Mortgage Electronic Registration Systems had a contractual interest among all of the lender's successors and assigns, this interest should also appear on each mortgage backed note. Terms of these Notes reserve nothing for Mortgage Electronic Registration Systems.

125. Mortgage Electronic Registration Systems' claim as beneficiary is also rendered impossible by the all inclusive grant of income from Plaintiff's deed of trust by American Home Mortgage Investment Trust 2006-3 to Deutsch Bank.

126. The claim that Mortgage Electronic Registration Systems holds legal title to Plaintiff's deed of trust is also meritless. Under the Uniform Commercial Code [Md. Code Comm. Law § 3-109], the party holding a bearer instrument is presumed to be its owner. Plaintiffs' deed of trust is a bearer instrument. Deutsche Bank physically holds this bearer instrument. Under Md. Code Comm. Law § 3-109, Deutsche Bank has a colorable claim to holding the legal title to Plaintiffs' deed of trust. While this instrument remains with Deutsche Bank, any claim to this legal title by Mortgage Electronic Registration Systems is spurious and illusory.

This position is further defeated by Maryland caselaw holding that legal title cannot be separated from equitable title. Investors hold equitable *and* legal title.

127. The authority of Mortgage Electronic Registration Systems to foreclose on a property is repudiated by the transaction documents. This entity is given no right to income generated by the property. Md. Code Real Prop. § 14-204 reserves the power to enforce a power of sale clause to a person entitled to payment of the money secured. This power is reserved exclusively for investors, not MERS.

128. Mortgage Electronic Registration Systems' authority springs from one source, and this is a recorded document in the county recorder's office.

129. There is no factual or legal basis to support a claim that Mortgage Electronic Registration Systems still holds *any interest* in Plaintiffs' Property, let alone the primary interest which entitles them to initiate a foreclosure.

130. Interests in land titles are supposed to be transparent and discoverable at the Register of Deeds office. Mortgage Electronic Registration Systems' interest is discoverable in this place. To discover the subterfuge concealing off record sales, you must look for American Home Mortgage Investment Trust 2006-3 documents. These can only be found in the Securities and Exchange Commission search engine. It would take a very extraordinary borrower to undertake such a task. The true current owner of Plaintiff's title will not be discovered in any public data base.

131. Chicanery or legal trickery is the practice of using dishonest or deceptive representations relating to law, to attain a position of power that is not supported by the facts. Chicanery is the only purpose served by the presence of Mortgage Electronic Registration Systems in Plaintiff's deed of trust.

132. Mortgage Electronic Registration Systems is an ingenious device to camouflage and overcome numerous off-record assignments taking place during the securitization process, by presenting the pretense of an ownership interest in Plaintiffs' title, while knowing full well that this interest is strictly spurious.

133. American Home Mortgage and Mortgage Electronic Registration Systems have employed chicanery to give the false impression that Mortgage Electronic Registration Systems can act as nominee for the Lender so it can pursue foreclosure. In reality, it holds nothing at all. The use of chicanery when seeking relief in equity is especially repugnant to the principles of justice.

**Fraudulent Conveyance to MERS**

134. Md. Code Real Prop. § 7-401 and Md. Code Real Prop. § 11-523 states in pertinent part:

Md. Code Real Prop. § 7-401 Definitions.

"*(d) Mortgage fraud.-* "Mortgage fraud" means any action by a person made with the intent to defraud that involves:

(6) Filing or causing to be filed in the land records in the county where a residential real property is located, *any document relating to a*

*mortgage loan that the person knows to contain a deliberate misstatement, misrepresentation,* or omission. [Emphasis added.]

Md. Code Real Prop. § 11-523. Penalties.

*(a) Willful violations.-* Any person who willfully violates any provision of this subtitle or any rule or regulation adopted under it is guilty of a felony and on conviction is subject to a fine not exceeding $50,000 or imprisonment not exceeding 10 years or both.

135. The purpose served by the conveyance from American Home Mortgage to Mortgage Electronic Registration Systems was to leave a deceptive chain of title in a local register of deed's office, indicating no other claimants beyond Mortgage Electronic Registration Systems exist; even though it knew of numerous off-record transactions and of hundreds of off-record beneficial owners. This projected a false pretense of enforceability. In practice, true enforceability was not practical.

136. The conveyance to Mortgage Electronic Registration Systems further served the purpose of placing a patina of legitimacy upon a foreclosure sale, which if subjected to close scrutiny, could not stand the glare of sunlight. It also furthered a scheme to make money while evading numerous Maryland statutes.

137. This conveyance from American Home Mortgage to Mortgage Electronic Registration Systems is a particularly toxic species of fraud, because the truth can only be discovered in documents filed with the Securities and Exchange Commission search engine, a place where few people, including attorneys, will dare to venture.

138. Only a guilty state of mind could conceive of such a situation-specific and deceptive scheme. Given this planning and its concealment behind intimidating legal documents, the specific intent to defraud can be inferred. This act is deliberate and it is a misstatement. These statements were lodged in a place where reliance is conferred by statute, and it is dictating the judgment of courts.

**Clouds Placed upon Plaintiff's Property**

139. The February 13, 2007 recorded instrument holding Plaintiffs' title is signed in blank and incapable of passing this interest on until it is endorsed by a person with authority to do so for American Home Mortgage. There are no officers or agents and there is no successor in interest for American Home Mortgage.

140. This contract for the sale of land is not enforceable because it has not been signed by the party to be charged, which is required by the statute of frauds.

141. Securitization agreements confirm eight off-record changes of ownership that can be tracked and an unknown number of additional off-record changes of ownership which cannot be tracked. American Home Mortgage has not held an interest of any kind in Plaintiffs' Property since late December, 2006.

142. The true owners of Plaintiffs' title are unknown and their whereabouts cannot be tracked in any public data base.

143. The conveyance from American Home Mortgage to Mortgage Electronic Registration Systems is there to serve as chicanery. It is also a

subterfuge, concealing numerous off-record transactions which would clearly make the acquisition of title insurance impossible.

144. The purported conveyance by American Home Mortgage to Mortgage Electronic Registration Systems is a fraudulent conveyance and should be subject to the penalties and fines authorized by Md. Code Real Prop. § 11-523.

145. The Deed of Trust contains a *power of sale* clause, which allows the owner of the title to commence foreclosure proceedings without going through a court of law. Such provisions are to be strictly circumscribed by statutes.

146. Under current recordings, foreclosure can be brought by a party holding no interest in this property.

### Plaintiffs *Quiet Title* Cause of Action against Defendants

147. Md. Code Real Prop. § 14-108, *Quieting title*, states in pertinent part:

*(a) Conditions. Any person in actual peaceable possession of property*, or, ... *when any other person claims, of record or otherwise* to ... *hold any lien encumbrance on it*, regardless of whether or not the hostile outstanding claim is being actively asserted, and if an action at law or proceeding in equity is not pending to enforce or test the validity of the title, lien, encumbrance, or other adverse claim, *the person may maintain a suit in equity in the county where the property lies to quiet or remove any cloud* from the title, or determine any adverse claim. [Emphasis added.]

148. Plaintiff possesses an interest in the Property by virtue of a deed of trust dated December 29, 2006.

48

149. Defendant claims an interest in Plaintiff's Property by virtue of a Deed of Trust recorded on February 13, 2007. This interest is no longer valid.

150. There are unknown parties with a legitimate interest in Plaintiffs' Property. These Parties are not identified. Their interests are not recorded.

151. Plaintiff concedes that she received a mortgage loan and that she is indebted to the *rightful owner*. Plaintiff contends that the true owner is unknown, and this person's identity does not appear in public records at the Register of Deeds. Plaintiff is asking this Court to use its Declaratory Judgment authority to remove clouds against its title and the false claim of ownership currently appearing in its chain of title by ordering the following relief.

### Prayer for Relief

1. Pursuant to Md. Code Real Prop.  § 14-108, Plaintiff respectfully asks this court to issue a declaratory judgment finding that the interest of American Home Mortgage and Mortgage Electronic Registration Systems Inc. in Plaintiffs' Property are void and of no legal force. This Court's declaratory judgment should further find that the conduct of Defendants has severely compromised the open, public and discoverable nature of Plaintiff's Property by engaging in chicanery. As a result, the public record for Plaintiffs' title is both false and fraudulent.

2. Plaintiff further asks this court to issue a declaratory judgment finding that the conveyance by American Home Mortgage to Mortgage Electronic

Registration Systems is a fraudulent conveyance, and further ordering these parties to pay penalties as a sanction for this misconduct.

3. This Courts' declaratory judgment should further stipulate that before any action can be taken to invoke the *power of sale* clause, all of these off-record changes of ownership must be corrected, in strict compliance with Maryland statutes governing transactions affecting land titles, and no such sale should be allowed until the problems addressed herein are corrected.

4. Plaintiff further requests reimbursement of all expenses paid in connection with this legal proceeding, including court costs and reasonable attorney fees.

5. Plaintiff further requests any other relief in the form of specific performance and compensation warranted by the evidence in the Record.

Respectfully submitted by

DAN RUPLI, ESQ.
18 E. Orndorff Drive
Brunswick, MD 21716
240-481-2677

NORMAN L. SIRAK, ESQ.
Ohio Reg. # 0038058
D.C. Bar #162669
4035 Cinwood Street N.W.
Massillon, Ohio  44646
Phone No. (330) 478 1947

50