# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

**Ann R. Rupli**

   **Plaintiff**


 vs.


**American Home Mortgage
Corporation, et al.**

   **Defendants**

**Case No. 8:11-cv-00287-RWT**




**MOTION  FOR JUDGMENT
ON THE PLEADINGS**

**Pursuant to Fed.R.Civ.P. 12(c)**

## TABLE OF CONTENTS

**Page**

**Motion for Judgment on the Pleadings**                                  **2**

**Memorandum in Support**                                                 **4**

**Statement of Facts and Law in Support of Motion**                       **5**

**Legal Standard for Judgment on the Pleadings**                          **9**

**Pertinent Background**                                                   **10**

**The MERS Business Model**                                               **12**

**The Securitization Process**                                            **17**

  **Purchase of Mortgage in Arm's Length Transaction**                    **19**

  **Physical Custody of Bearer Instrument**                               **22**

  **Final Sale to Investors**                                             **23**

  **Depository Trust, Investors and Trustee Bank**                        **24**

**Application of Md. Code Comm. Law § 3 – 203(b)**                        **27**

**Instrument Not Recorded with Montgomery County**                        **29**

**Non-compliance with Applicable Maryland Statutes**                      **31**

**Utilizing MERS as a Subterfuge**                                        **36**

**Interest of MERS now Void Ab Initio**                                   **40**

**Conclusion**                                                            **41**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

**Ann R. Rupli**                                    **Case No. 8:11-cv-00287-RWT**

     **Plaintiff**


vs.                                                   **MOTION  FOR JUDGMENT
ON THE PLEADINGS**


**American Home Mortgage
Corporation, et al.**

     **Defendants**

Opposing Counsel has informed Plaintiff's counsel that no Answer will be forthcoming on March 28, 2011. A Fed.R.Civ.P. 12(b)(6) [hereafter *Rule 12(b)(6)*] Motion to Dismiss will be filed in its place. Pleadings are therefore closed. For judicial efficiency and expediency, Plaintiff is respectfully filing this Motion for a Judgment on the Pleadings pursuant to Fed.R.Civ.P. 12(c) [hereafter *Rule 12(c)*] so that both dueling Rule 12 motions can be considered at the same time. For good cause, Plaintiff has attached a Memorandum in Support, which is hereby incorporated by reference as if printed here. A Suggested Order is also attached.

Respectfully submitted;

/s/ Norman L. Sirak
_____
    Norman L. Sirak, Bar # 29518
    4035 Cinwood Street

Massillon, Ohio 44646
Phone (330) 478 - 1947
Email nsirak@parolereform.com

/s/ Dan Rupli
_____

Dan Rupli, Esq.
18 E. Orndorff Drive
Brunswick, Md.  21716
Phone (240) 481 2677
Email Rupli@aol.com

### Certificate of Service

A copy of the foregoing and all attachments will be sent to Russell J. Pope of the law firm Treanor, Pope & Hughes P.A. at 29 W. Susquehanna Avenue, Suite 110, Towson, Maryland 21204 and Alan Freeman, John Lucian and Jonathan Scott Goldman of Blank Rome LLP, at 600 New Hampshire Ave. N.W., Washington, D.C. 20037 via the Court's electronic filing system.

/s/ Norman L. Sirak
_____

Norman L. Sirak

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

**Ann R. Rupli**                               **Case No. 8:11-cv-00287-RWT**

      **Plaintiff**


  vs.                                                 **MOTION FOR JUDGMENT
ON THE PLEADINGS**


**American Home Mortgage
Corporation, et al.**

      **Defendants**


**MEMORANDUM IN SUPPORT**

**Statement of Facts and Law in Support of Motion**

These irrefutable facts and accompanying statutes support this Motion.

1. Mortgage Electronic Registration Systems Inc. (a/k/a *MERS*) does not originate mortgage loans, it does not service loans and it does not invest in mortgage loans. Its sole purpose is to operate a tracking service called the MERS Registry. Information is posted to the MERS Registry by Member employees. No responsibility is assumed by MERS for the accuracy of this information.

2. Mortgage Electronic Registration Systems has no ownership rights to any information posted on the MERS System; it may not be listed as the [Promissory] Note owner in any foreclosure complaint; and if a member pleads Mortgage Electronic Registration Systems as the note owner, this act is a violation of its Membership Rules and will be penalized with fines.[1]

3. Mortgage Electronic Registration Systems is described in Plaintiff's Deed of Trust as the *nominee* of the Lender [2] and as the *beneficiary*. [3] These claims make Mortgage Electronic Registration Systems a party to Plaintiff's Deed of Trust pursuant to Md. Code Real Prop.§ 14-201 .

4. As the lender's nominee and beneficiary, all powers, rights and privileges held by Mortgage Electronic Registration are derived through and are inextricably

---

[1] *See* Plaintiff Exhibit 1, Excerpt from Mortgage Electronic Registration System Membership Rules, Rule 9, § 1 (b) at p. 28, Rule 8, § 2 (a)(i) at and (c) at p. 26.
[2] See Plaintiff Exhibit 5, Deed of Trust ¶ (E) p. 2.
[3] See Plaintiff Exhibit 5, Deed of Trust, *Transfer of Rights in Property* clause, p. 3.

intertwined with the powers, rights and privileges held by the originator of these interests, American Home Mortgage Corp. [hereafter *American Home Mortgage*].

6. On the date when Plaintiff's Deed of Trust was signed, American Home Mortgage held both legal and equitable title to Plaintiff's security instrument. However, shortly after this mortgage loan was made, the interest of American Home Mortgage in this security instrument was sold, and the purchaser of this interest did not adopt or reaffirm the position of Mortgage Electronic Registration Systems as its nominee and beneficiary.

7. Although a party to Plaintiff's Deed of Trust, Mortgage Electronic Registration Systems did not acknowledge or sign this contractual agreement.

8. Plaintiff's Deed of Trust has also not been signed or acknowledged by the originator of the loan, American Home Mortgage Corporation.

9. Pursuant to the Maryland Statute of Frauds [i.e. Md. Code Real Prop. § 5-104], any conveyancing instrument granting an interest in land must be reduced to writing and it must be signed by the party to be charged.

10. No contemporaneous document is attached to Plaintiff's Deed of Trust formalizing Mortgage Electronic Registration Systems' appointment as the lender's beneficiary; and neither corporation has signed the Deed of Trust. Since this covenant affects an interest in land, the statute of frauds requires such a writing signed by the party to be charged [i.e. American Home Mortgage Corporation].

Since American Home Mortgage Corporation is no longer in business and it has no successors in interest, this defect cannot be cured. Absence of a document signed by the party to be charged means that Mortgage Electronic Registration Systems' appointment as the lender's beneficiary is unenforceable and subject to the statute of frauds forfeiture provision.

11. Mortgage Electronic Registration Systems has no pecuniary interest in Plaintiff's deed of trust. It can demonstrate no past harm suffered because Plaintiff does not owe this company any money in relation to this mortgage loan. It will suffer no future harm since Plaintiff will never owe this company any money.

12.  Mortgage Electronic Registration Systems' business model is built upon the premise that it can serve as both the agent (i.e. nominee) and principal (i.e. beneficiary) with regard to ownership of an underlying debt obligation, without actually owning or holding this debt obligation. This violates every rule in real property conveyancing and the Uniform Commercial Code, as well as the very oldest rule of mankind; it violates common sense.

13. Deceptious appearance of title occurs when a claimant holds itself out as the holder of an interest in property, when in truth, this claimant holds nothing. The claim of Mortgage Electronic Registration Systems to an interest in Plaintiff's deed of trust is bankrupt of validity and legitimacy, and constitutes an example of deceptious appearance of title.

## Legal Standard for Judgment on the Pleadings

The foundation stone for this Motion for a Judgment on the Pleadings was laid when Plaintiff and Counsel for the Plan Trustee of American Home Mortgage filed a Joint Motion to dismiss American Home Mortgage with Prejudice.[4] In the Agreement between Plaintiff and the Plan Trustee, it was agreed that American Home Mortgage is not a functioning business, it has no successors in interest and it will never again become engaged in mortgage lending.

A Rule 12(c) motion maintains that a Defendant lacks the capacity to participate in a proceeding. With these factual admissions from the Plan Trustee for American Home Mortgage, Plaintiff maintains that Mortgage Electronic Registration Systems lacks the capacity to participate in this proceeding. A Rule 12(c) motion is analyzed under the same standards that apply to a motion to dismiss under Rule 12(b)(6). The evidence and all factual inferences must be viewed in a light most favorable to the party opposing the motion.

A quiet title action is well suited to dueling Rule 12 motions. Records at the Montgomery County Land Registration Office define the subject matter of this claim. These documents speak for themselves. There are no genuine issues of material facts. Nothing will be clarified by further factual development. These issues are purely legal and can all be disposed of as a matter of law right now.

---

[4] *See* Doc. # 21, Joint Motion to Dismiss. *See also* Plaintiff Exhibit 6, Agreement.

**Pertinent Background**

Mortgage Electronic Registration Systems is a shell company. Its founding members include Bank of America, Citigroup, J.P. Morgan Chase and Wells Fargo. The term *shell company* refers to an entity that serves as a vehicle for business transactions without any significant assets or operations of its own. Mortgage Electronic Registration Systems has only 50 full time employees at its Virginia office.[5] It sole purpose is to perform a tracking function by operating the MERS Registry. Member organizations post information to the MERS Registry, and MERS makes no representations that this information is accurate.[6]

There are over 20,000 certifying officers of this company entitled to call themselves either a Vice President, Assistant Vice President, Secretary or Assistant Secretary of Mortgage Electronic Registration Systems.[7] To become a certifying officer, a person must first have signing authority as an officer of a member institution. Then they must take an online examination, fill out an online form and pay a $25 fee.[8] Mortgage Electronic Registration Systems exercises no supervision

---

[5] See Plaintiff Exhibit 2, Remarks by R.K. Arnold, President of Merscorp Inc., before the Senate Committee on Banking, Housing and Urban Affairs, November 16, 2010 at p. 10 [hereafter *Remarks by R.K. Arnold before Senate Comm*].

[6] *See* Plaintiff Exhibit 3, a printout from the MERS Registry, and its disclaimer on the bottom of this report, which is reproduced in large font type.

[7] Response by  R. K.  Arnold during the question and answer session of the Senate Committed Hearing on November 16, 2010.

[8] *See* Plaintiff Exhibit 2, Remarks by R. K. Arnold before Senate Comm, pp's 11, 19.

over documents signed by its deputized officers on its behalf. It has about 3,000 member organizations[9] and it is currently participating in 31 million mortgage loans.[10] Mortgage Electronic Registration Systems is established under Delaware law, where there is no requirement that a corporate officer must also be an employee or any requirement that an officer must even be paid for their services.[11]

The *National Association of Independent Land Title Agents* succinctly summarized the purpose and status of Mortgage Electronic Registration Systems.

> "To avoid paying county recording fees each time the mortgages were assigned, mortgage bankers and the title insurance industry – more on that in a moment – formed a plan to create *one shell company that would pretend to own all the mortgages in the country*. By doing so, the mortgage bankers would never have to record assignments since the same company would always "own" all the mortgages. The company they created is now known as Mortgage Electronic Registration Systems, Inc. or MERS. *60% of the nation's mortgages are now held by MERS, whether as a nominee or as the actual mortgagee.*" [12] [Emphasis added.]

The statement that Mortgage Electronic Registration Systems would own all of the country's mortgages was recently affirmed by its President.

> "The chain of title starts and stops with Mortgage Electronic Registration Systems Inc. as the mortgagee."[13]

---

[9] See Plaintiff Exhibit 2, Remarks by R.K. Arnold before Senate Comm. p. 1.

[10] See Plaintiff Exhibit 2, Remarks by R.K. Arnold, Senate Comm. p. 10.

[11] See Plaintiff Exhibit 2, Remarks by R.K. Arnold before Senate Comm. p. 12.

[12] *See* Plaintiff Exhibit 4, White Paper by National Association of Independent Land Title Agents, commenting favorably upon Congresswoman Marcy Kaptur's Bill H.R. 6460, at p. 2.

[13] Plaintiff Exhibit 2, Remarks by R.K. Arnold before Senate Committee, p. 16.

**The MERS Business Model**

Plaintiff's Deed of Trust is a form titled:

"MARYLAND single family Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS Form 3021" [14] (all caps in original).

Mortgage Electronic Registration Systems appears in three paragraphs in Plaintiff's deed of trust. The wording of these paragraphs is always the same. The first MERS paragraph appears under *Definitions* and states:

"(E) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is *acting solely as a nominee* for *Lender and Lender's successors and assigns. MERS is the beneficiary* under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, Ml 48501-2026, tel. (888) 679-MERS" [15] (all caps in original, ital. added for emphasis).

In conclusory fashion, without any accompanying document from American Home Mortgage (i.e. the Lender) appointing Mortgage Electronic Registration Systems its nominee and beneficiary, and without any contemporaneous document – including Plaintiff's Deed of Trust – signed by the party to be charged (i.e. American Home Mortgage), MERS is empowered to act as both the Lender's agent and principle inside the same transaction. Plaintiff's Deed of Trust is not simply unsigned by the Lender. There is not even a place at the end of this Fannie Mae / Freddie Mac form reserved for affixing the Lender's signature.

---

[14] *See* Plaintiff Exhibit 5, Deed of Trust, page 1 of form near bottom of page, just above Bar Code.

[15] *See* Plaintiff Exhibit 5, Deed of Trust, Definitions ¶ (E), p. 2.

The term *nominee* has been used and abused enough to find its width and breadth defined and explained in published legal decisions as follows:

> "The word *nominee* ordinarily indicates one *designated to act for another as his representative in a rather limited sense*. It is used sometimes to signify an agent or trustee. *It has no connotation, however, other than that of acting for another, or as the grantee of another.*" [16]  [Emphasis added.]

Black's Law Dictionary defines a nominee as "[a] person designated to act in place of another, usually in a very limited way." [17]

In addition to acting as Lender's nominee, Mortgage Electronic Registration Systems is given a license to act as nominee for *the Lender's successors and assigns*. These successors and assigns are not disclosed. Once again, there is no contemporaneous document signed by the principle, American Home Mortgage, mandating that its own *nominee* relationship with Mortgage Electronic Registration Systems is to be imposed upon its successors and assigns. The existence of a relationship between Mortgage Electronic Registration Systems and the Lender's successors and assigns is apparently expected to be accepted on faith.

Mortgage Electronic Registration Systems is also the *beneficiary* of this security instrument. Membership Rules for Mortgage Electronic Registration Systems and the third paragraph discussing their role in the Deed of Trust impose a

---

[16] *See Schuh Trading Co., v. Comm*, 95 F.2d 404, 411 (7th Cir. 1938), cited with approval in *Bank of NY v Alderazi*, 900 N.Y.S. 2nd 821, 823  (N.Y. Sup. Ct. 2010).
[17] *See Bank of NY v Alderazi*, 900 N.Y.S. 2nd 821, 823  (N.Y. Sup. Ct. 2010).

severely constricted meaning upon the term *beneficiary*.  These Membership Rules state, in pertinent part:

> "(i) The Member *shall not plead MERS as the note-owner* in any foreclosure document; including but not limited to, the foreclosure complaint."[18] [Emphasis added.]

The *Together With* clause in the Deed of Trust states:

> "Borrower understands and agrees that *MERS holds only legal title to the interests granted by Borrower* in this Security Instrument," [19] [Emphasis added.]

After making a loan, the Lender always holds the equitable and legal title to the Note and Security Instrument. This interest *can only be granted by the Lender*, not the Borrower. After factoring in Membership Rules and the last MERS clause into this equation, we are left with an emasculated and truncated version of *beneficiary*. It is emasculated because Mortgage Electronic Registration Systems is barred from claiming any status as owner of the Note. It is truncated because its interest in the security instrument extends only to the legal title; necessarily leaving equitable title for the deed of trust untouched and parked with the original Lender.

**The *Transfer of Rights in the Property* Clause**

The second clause appears immediately after *Definitions* and states:

> "*The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the*

---

[18] See Plaintiff Exhibit 1, Excerpt from MERSCORP, Inc. Membership Rules, Rule 8 Foreclosure, § 2 (a) (i).
[19] See Plaintiff Exhibit 5, Deed of Trust, p.3.

*successors and assigns of MERS.* This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property in the County of Montgomery …" [20]   [Emphasis added.]

This clause merely repeats the representations set out in *Definitions*.

## The *Together With* clause

The third and final paragraph discussing Mortgage Electronic Registration Systems appears at the bottom of the same page and states in pertinent part:

"*Borrower understands and agrees* that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, *if necessary to comply with law or custom, MERS* (as nominee for Lender and Lender's successors and assigns) *has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property*; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument." [21] [emphasis added.]

Attorneys for Mortgage Electronic Registration Systems place a great deal of reliance upon this clause and, in particular, upon the statement that the Borrower *understands and agrees* that MERS has the right to foreclose and sell their home. This argument is flawed on four different levels.

In the first place, the parties bargaining power to this and every other deed of trust leans lopsidedly in favor of the Lender. These terms are not negotiable. This

---

[20] *See* Plaintiff Exhibit 5, Deed of Trust, at p. 3.
[21] See Plaintiff Exhibit 5, Deed of Trust, at p. 3.

is a take it or leave it proposition. Contracts with lopsided bargaining power and inflexible terms are called *contracts of adhesion.*[22] Under these circumstances, there is no *informed consent* by the borrower to this specific term.

Secondly, a borrower's consent has no bearing upon what powers have been granted by the lender to Mortgage Electronic Registration Systems.[23] The root issue is whether this authority was conveyed. A borrower's consent cannot expand upon powers granted by a lender to Mortgage Electronic Registration Systems.

Third, law and custom in Maryland requires a pecuniary interest in the underlying debt obligation as an indispensable prerequisite for enforcing a power of sale clause through foreclosure. Md. Code Real Prop. § 14-204 states:

> "(a) Manner of enforcement and foreclosure. *A lien may be enforced and foreclosed by the party who obtained the lien* in the same manner, and subject to the same requirements, as the foreclosure of mortgages or deeds of trust on property in this State containing a power of sale or an assent to a decree." [Emphasis added].

MERS Membership Rules stipulate that Mortgage Electronic Registration Systems shall have *no ownership rights whatsoever* in any information posted on the MERS System.[24] This self imposed restraint bars it from bringing any foreclosure action in its own name in Maryland.

---

[22] West's Encyclopedia of American Law, Edition 2, 2008, refers to a contract of adhesion as one which utilizes a contract form offering goods to consumers on a take it or leave it basis without giving realistic opportunities to negotiate terms.

[23] See Bank of NY v. Alderazi, 900 N.Y.S. 2nd 821, 824 (N.Y. Sup. Ct 2010).

[24] *See* Plaintiff Exhibit 1, Membership Rule 9, § 1 (b) at p. 28.

Finally, and not withstanding the absence of a pecuniary interest in the underlying debt obligation, the only authority clearly conveyed from the lender to Mortgage Electronic Registration Systems is the right to bring a foreclosure *in its own name* on lender's behalf. On February 16, 2011, Mortgage Electronic Registration Systems issued an announcement rescinding its authority to initiate foreclosures *in its own name*. In pertinent part, this MERS Announcement states:

> "…MERS Members should implement the following practices, effective immediately.
>
> 1. MERS is planning to shortly announce a proposed amendment to Membership Rule 8. *The proposed amendment will require Members to not foreclose in MERS' name*. Consistent with the Membership Rules there will be a 90-day comment period on the proposed Rule. *During this period we request that Members do not commence foreclosures in MERS' name*…." [25] [Emphasis added.]

The primary purpose for the MERS statement in the *Together With* clause is to convey authority upon MERS to initiate a foreclosure in its own name. This authority has just been voluntarily disavowed by MERS.

### The Securitization Process

From 2004 to August of 2007, American Home Mortgage sponsored 33 mortgage-backed securitized transactions.[26] The process of securitizing mortgages consists of bundling thousands of mortgages and sorting them into pools. At the same time, mortgage-backed securities are created. Each class of mortgage-backed

---

[25] See Plaintiff Exhibit 7, MERS Announcement # 2011-01, Feb. 16, 2011.
[26] See Plaintiff Exhibit 8, American Home Mortgage sponsored securitizations.

securities becomes bonded to a defined pool of mortgages. These stocks are then sold as secured investments to *sophisticated investors,* a term which means only qualified, high worth individuals and businesses. The minimum investment for buying mortgage-backed certificates is $100,000. Every purchaser of a mortgage-backed certificate receives a pro rata share of each mortgage loan in their pool.

Plaintiff received a loan from American Home Mortgage on December 29, 2006. A securitization transaction sponsored by American Home Mortgage had a cut-off date of December 28, 2006. Plaintiff appears to be one day late. Closer examination reveals two other possibilities. On the Deed of Trust copy held by Plaintiff,[27] which memorializes the document on the day it was signed, *MIN 100024200015750009* appears in printed type. This number was generated by a MERS software program. Before Plaintiff signed her documents, a place may have been reserved for her in *American Home Mortgage Investment Trust 2006-3.* It is also possible that she was added after this cut-off date as a substitute loan.[28]

The *American Home Mortgage Investment Trust 2006-3* securitization is discussed in Plaintiff's complaint and described herein. The transaction title is secondary. Securitizing mortgages is a process. This process necessarily requires a

---

[27] *See* Plaintiff Exhibit 5, Deed of Trust, first copy of front page.

[28] *See* Plaintiff Exhibit 9, Excerpt from *Indenture Agreement*, at p. 4 ["No later than the Closing Date (i.e. December 28, 2006), with respect to the Mortgage Loans (or, with respect to any Eligible Substitute Mortgage Loan, within 5 days after the receipt by the Indenture Trustee thereof and, with respect to any documents received after the Closing Date, promptly thereafter."]

sale of the mortgage to a buyer in an arm's length transaction, movement of the paper to a trustee bank, and then a final sale to investors. When the process has run its full course, an awkward alignment is created between investors, an intermediary clearing house (i.e. Depository Trust and Clearing Corporation, hereafter *Depository Trust*], and a Trustee Bank. This process and the intermediary party (i.e. Depository Trust) do not change. *Every securitized mortgage travels this road*.

**Purchase of Mortgage in Arm's Length Transaction**

American Home Mortgage was structured to do securitization transactions. Plaintiff's loan was assigned to an affiliate *American Home Mortgage Investment Corp*. [29] and then to another affiliate *American Home Mortgage Acceptance*, *Inc*.[30] These transfers were preparatory to the securitization process. The first change of ownership piercing the securitization transaction occurred when American Home Mortgage Acceptance Inc. sold its loans to American Home Mortgage Securities L.L.C.[31] While this transaction is labeled a sale, affiliates of the same parent entity are positioned on both sides of the deal.

An arm's length transaction finally takes place after a new trust is created beyond the American Home Mortgage umbrella of affiliates called *American Home Mortgage Investment Trust 2006-3*. This trust is operated by Wilmington

---

[29] See Plaintiff's Complaint, ¶ 48.
[30] See Plaintiff's Complaint, ¶ 52.
[31] See Plaintiff's Complaint, ¶ 55.

Trust. The sale from *American Home Mortgage Securities LLC* to *American Home Mortgage Investment Trust 2006-3* is a clean break from the past and states.

> "(a) Effective as of the date hereof, the Depositor [i.e. American Home Mortgage Securities LLC] *does hereby assign, transfer, and otherwise convey to, and deposit with*, the Trust [i.e. American Home Mortgage Investment Trust 2006-3], until this Agreement terminates pursuant to Section 8.01, the entire Trust Estate, *such conveyance to be made in exchange for the Notes and the Certificate*. Such assignment includes, without limitation, all amounts payable to and all rights of the holder of the Collateral pursuant to this Agreement.
>
> "The conveyance of the Collateral and all other assets constituting the Trust Estate by the Depositor [i.e. American Home Mortgage Securities LLC] as contemplated hereby *is absolute and is intended by the parties to constitute a sale of the Collateral and all other assets constituting the Trust Estate by the Depositor to the Trust.*" [32] [Emphasis added.]
>
> Md. Code Real Prop. § 2-101 explains how the word *sale* is to be construed.
>
> "The word *grant*, the phrase *bargain and sell*, in a deed, or any other words purporting to transfer the whole estate of the grantor, *passes to the grantee the whole interest* and estate of the grantor in the land mentioned in the deed *unless a limitation or reservation shows, by implication or otherwise a different interest.*" [Emphasis added.]

Under Maryland law, this conveyance is a transfer of the whole interest. Nothing is held back. No other meaning can attach to the words, *the conveyance of the collateral and all other assets .. is absolute and intended by the parties to be a sale*." After this conveyance, the interest of the Lender named in Plaintiff's Deed of Trust has been reduced to nothing.

---

[32] *See* Plaintiff's Exhibit 10, Trust Agreement, § 2.12 at pp.'s 5-6.

The question remains, what about the interest of Mortgage Electronic Registration Systems as nominee and beneficiary? Did *American Home Mortgage Investment Trust 2006-3* adopt the lender's arrangement with MERS?

Documents making up a securitization transaction are voluminous. The Indenture Agreement, the Trust Agreement, the Underwriting Agreement and the Mortgage Loan Purchase Agreement can exceed 100 pages. In these agreements, Mortgage Electronic Registration Systems appears twice. In the Trust Agreement, MERS and the MERS System appear in § 6.06, titled *Owner Trustee Not Liable for the Certificate or Related Documents*. This paragraph states, "the Owner Trustee makes no representations as to the validity or sufficiency … of MERS or the MERS System."[33] In the Underwriting Agreement, MERS appears in paragraph (p) of warranties made by *American Home Mortgage Securities LLC.*

> "Any taxes, fees and other charges …will be paid by the Company (i.e. American Home Mortgage Securities LLC.) prior to the Closing Date, except for fees for recording assignment …*or, if applicable, to MERS* on behalf of the Indenture Trustee … which fees will be paid by the Company." [34] [Emphasis added.]

The first reference disavows any responsibility for the validity and sufficiency of MERS or the MERS System. The second reference dictates who is responsible for paying MERS fees. When Plaintiff's Deed of Trust was conveyed to *American Home Mortgage Investment Trust 2006-3,* the nominee and beneficiary

---

[33] *See* Plaintiff Exhibit 10, Trust Agreement, § 6.06 at p. 9.
[34] *See* Plaintiff Exhibit 11, Underwriting Agreement, ¶ (p) at p. 5.

relationship of MERS to the lender was not adopted by the new owner. Now, Mortgage Electronic Registration Systems was also left *holding nothing*.

**Physical Movement and Custody of Bearer Instruments**

Neither the lender nor Mortgage Electronic Registration Systems signed the Deed of Trust, making it bearer paper. Md. Code Comm. Law § 3-205 [U.C.C. § 3 – 205] states that physical possession is an essential element for proving ownership of a bearer instrument. If Mortgage Electronic Registration Systems is to hold legal title to Plaintiff's deed of trust, it must also hold physical possession of this paper.

The Indenture Agreement states in pertinent part:

"(a) The Indenture Trustee [i.e. Deutsche Bank] shall acknowledge receipt of, … the documents (or certified copies thereof) referred to in Section 2.1(b) of the Mortgage Loan Purchase Agreement, *and to declare that it holds and will continue to hold those documents* and any amendments, replacements or supplements thereto and all other assets of the Trust Estate, *in trust for the use and benefit of all present and future Holders of the Notes*." [35] [Emphasis added.]

Long term custody of these instruments has been entrusted to Deutsche Bank. Mortgage Electronic Registration Systems has not been given custody of this paper. Article 3-109 of the U.C.C. [Md. Code Comm. Law § 3-109] states that the party holding a bearer instrument is presumed to be its owner. Two Uniform Commercial Code Provisions render the claim of Mortgage Electronic Registration Systems as holder of the legal title in Plaintiff's bearer instrument, meritless.

---

[35] *See* Plaintiff Exhibit 9, Excerpt from Indenture Agreement, § 2.03, at p. 4.

**Final Sale to Investors**

In every securitization transaction, there is a clause titled *Persons deemed owners*. In this American Home Mortgage transaction, this clause states:

> "Section 4.04 *Persons Deemed Owners*. Prior to due presentment for registration of transfer of any Note, the Issuing Entity[ i.e. American Home Mortgage Investment Trust 2006-3] , the Indenture Trustee [i.e. Deutsche Bank], the Paying Agent and any agent of the Issuing Entity or the Indenture Trustee or the Paying Agent *may treat the Person in whose name any Note is registered … as the owner of such Note for the purpose of receiving payments of principal of and interest, if any, on such Note and for all other purposes whatsoever*, …." [Emphasis added.][36]

Since investors are the designated recipients of principal and interest, they are responsible for all taxes owed. Revenue streams earned for servicing these instruments become exempt. This IRS revenue treatment explains why this clause is included in every securitization transaction. There is also a real property conveyancing consequence attached to this clause. Earlier, we noted how Md. Code Real Prop. § 14-204 required a pecuniary stake in the underlying debt as an indispensable condition for commencing a foreclosure. Investors are successors in interest to the Lender. Investors alone now hold this pecuniary stake in the debt.

In the *American Home Mortgage Investment Trust 2006-3* transaction, the cumulative value of the mortgages equals $1,669,430,000 [one billion, six hundred sixty-nine million, four hundred thirty thousand dollars]; and these mortgages are

---

[36] See Complaint, ¶ 85, at pp.'s 30-31. See also Plaintiff Exhibit 9, Excerpt from Indenture Agreement, § 4.04 at p. 12.

supporting seventeen classes of mortgage-backed notes, each of which is collateralized by its own compartmentalized pool of mortgages.[37] The minimum investment offered was for $100,000. Dividing $100,000 into $1,669,430,000 equals 16,694, and this gives us a rough approximation of the number of investors. Dividing 16,694 by 17 equals 982; and this is a rough approximation of investors participating in each class of mortgage-backed securities. Each investor owns only a pro rata share of each mortgage in their pool.[38] Plaintiff's credit score was over 700 when this Deed of Trust was signed, which means that her loan would be assigned a high grade. The number of investors owning a pro rata share of her deed of trust may exceed 982. More fundamentally, these numbers give us an insight into the composition of these investors. Their numbers run at least into the hundreds and potentially into the thousands. *Each mortgage has a lot of owners*.

**Depository Trust, Investors and the Trustee Bank**

American Home Mortgage Investment Trust 2006-3 (i.e. Wilmington Trust) transferred all rights and interest in these instruments to Deutsche Bank, so it could bond these mortgages to mortgage-backed notes.[39] Once this was done, you would expect the Trustee (i.e. Deutsche Bank) to transfer all rights and interests in these

---

[37] *See* Complaint, ¶ 77, at pp.'s 26 – 27. *See also* Plaintiff Exhibit 11, Underwriting Agreement at p. 2.

[38] See Complaint, ¶ 75 at pp.'s 25-26. *See also* Plaintiff Exhibit 12, Investment Trust Certificate, p. 4.

[39] See Complaint, ¶ 68. *See also* Plaintiff Exhibit 9, Indenture Agreement, p. 3.

debts to investors. That is not how it works. Deutsche Bank transferred these mortgage-backed notes, now embedded with full ownership privileges for a pool of mortgages, back to American Home Mortgage Securities LLC. Next, American Home Mortgage Securities LLC transfers all rights and interest to an intermediary, Depository Trust.[40] There is no privity of contract between Deutsche Bank (i.e. the Trustee) and investors. Depository Trust stands between them and separates them.

The normal purpose served by Depository Trust is to act as a clearing house for equity investments, including mortgage-backed notes.  It is also known as the *Depository* and by its initials *DTC*. Accounts are held in the name of a pseudonym *Cede & Co*. In this transaction its mission is much broader than moving equities from point A to point B. Depository Trust has been appointed the authorized representative for all investors. The Indenture Agreement states:

> "The *Indenture Trustee* [i.e. Deutsche Bank] and the Securities Administrator [i.e. Wells Fargo Bank] *may for all purposes* (including the making of payments due on the Notes) *deal with the Depository as the authorized representative of the Beneficial Owners* with respect to the Book-Entry Notes *for the purposes of exercising the rights of Holders of the Notes hereunder.*"[41] [Emphasis added.]

> "(iv) the rights of Beneficial Owners *shall be exercised only through the Depository* and *shall be limited to those established by law and agreements between such Owners of Notes and the Depository* and/or the Depository Participants."[42]   [Emphasis added.]

---

[40] *See* Complaint, ¶ 78. See also Exhibit 11, Underwriting Agreement, p. 5.
[41] See Plaintiff Exhibit 9, Indenture Agreement, § 4.01 at p. 11.
[42] Plaintiff Exhibit 9, Indenture Agreement, § 4.06 (iv) at p. 13.

Investors are the only parties with a pecuniary interest in the underlying debt obligation These owners can only communicate with Depository Trust. The only subject suitable for discussion are the rights established between themselves and Depository Trust. Depository Trust also retains an interest in each mortgage-backed security issued. The Investment Certificate states:

> "Unless this note is presented by an authorized representative of the Depository Trust Company ...for registration of transfer, exchange or payment, *and any note issued is registered in the name of Cede & Co.* .... *and any payment is made to Cede & Co.* ... any transfer, pledge or other use hereof for value or otherwise by or to any person is wrongful inasmuch as the *registered owner hereof, Cede &Co., has an interest herein.*" [43] [Emphasis added.]

In addition to being given the exclusive channel of communication between investors and the trustee bank, *and* being made the holder of an interest in each security issued, Depository Trust is also the exclusive custodian for these mortgage-backed notes. As the term on the Investment Certificate makes clear, any transfer, exchange, pledge or any other use taking place beyond the confines of Depository Trust is prohibited. This Investment Certificate makes no reference to Mortgage Electronic Registration Systems. More fundamentally, if an investor wanted to transfer, exchange or make any other use of a mortgage-backed note that favored Mortgage Electronic Registration Systems at the expense of Depository Trust, that action is emphatically prohibited by the Certificate's terms.

---

[43] Plaintiff Exhibit 12, Investment Certificate, p. 2. Type in original is in bold face and all caps. This type is modified to normal print, 14 point times new roman.

After accepting all rights and interests in the underlying debt obligations from American Home Mortgage Securities LLC, Depository Trust becomes the grantor. All rights and interests in these instruments are finally transferred to investors.[44] This transaction is the first of all future transactions. The computers of Depository Trust are internally making transfers from initial investors to all future investors on a secondary mortgage market. Mortgages have been converted into a commodity. The owners of this commodity are changing with every new sale.

.      One property of a commodity is that the physical attributes of a unit are interchangeable with other units, such that individuality is erased. Forcing investors to exercise rights only through the artificial intelligence of Depository Trust, and limiting these rights to rules already stored in its memory, is simply the normal, logical progression of events necessitated by dealings with commodities. What is not normal; is to transform a family's most valuable asset, namely their home, and diminish its status until it is placed on a footing equivalent to bananas.

### Application of Md. Code Comm. Law § 3-203(b)

Ownership rights in instruments relating to land are subject to principles of property law, independent of Article 3 of the Uniform Commercial Code. For a mortgage, there is no presumption under Md. Code Comm. Law § 3-308 [U.C.C. 3-308] that a transferee is entitled to payment simply by producing the instrument.

---

[44] See Complaint, ¶ 84.

Because of special safeguards in the form of recording statutes established to protect interests in property, the owner of an interest in land must prove *rightful possession*. U.C.C. Official Comment 2 for Md. Code Comm. Law § 3-203(b) [U.C.C. § 3-203(b)] states:

> "Because the transferee's rights are derivative of the transferor's right's those rights must be proved."

This fact is reinforced by a functionally equivalent statute contained in Maryland's real property chapter. Md. Code Real Prop. § 2-103 states:

> "Every valid assignment of a mortgage is sufficient *to grant to the assignee every right which the assignor possessed* under the mortgage at the time of the assignment." [Emphasis added.]

Among the laws existing between Depository Trust and investors, you will not find the Real Property statutes of Maryland. Unlike American Home Mortgage and Deutsche Bank, Depository Trust operates on artificially created memory and task driven computer programs. It can move a security between two points in nanoseconds. But if asked to certify the legality, validity and enforceability of a mortgage, Depository Trust will not just lack an answer. It will not understand the question. All investors must take their interest through Depository Trust. In accord with Md. Code Comm. Law § 3-203(b) and Md. Code Real. Prop. § 2-103, these investors are not receiving warranties for the legality, validity and enforceability of these debts. Since these warranties have never been extended to them, investors are in no position to pass these warranties on to any future buyer at a foreclosure.

## Instruments Not Recorded with Montgomery County

During the securitization process, all rights, title and interest in Plaintiff's debt changed hands at least five times, not counting changes taking place among American Home Mortgage affiliates. The first arm's length change of ownership occurred when Plaintiff's deed of trust was sold to American Home Mortgage Investment Trust 2006-3.[45] There is nothing in Plaintiff's chain of title at the Montgomery County Land Registration Office attesting to this sale, despite the fact that securitization documents mandated the recording of this event.[46].

The second change of ownership transferred all rights and interest in Plaintiff's deed of trust to Deutsche Bank as Trustee.[47] In addition to acquiring all rights and interest in the mortgages, Deutsche Bank assumed long term custody of the bearer instruments. Md. Code Real Prop. § 3 - 102(a) states that any instrument affecting title to real property may be recorded. Since possession is an essential element for establishing ownership of a bearer instrument, this transaction affects Plaintiff's title and may be recorded. There is nothing in Plaintiff's chain of title, indicating that this bearer instrument is now being held by Deutsche Bank.

The third and fourth changes of ownership took place when Deutsche Bank transferred all rights and interests in the underlying debts to American Home

---

[45] See Complaint, ¶ 61 and Plaintiff Exhibit 10, Trust Agreement, at p. 4.
[46] See Complaint, ¶ ¶ 108, 109. Plaintiff Exhibit 9, Indenture Agreement, p. 11.
[47] See Complaint, ¶ 68 and Plaintiff Exhibit 9, Indenture Agreement at p. 3.

Mortgage Securities LLC, who in turn immediately transferred all rights and interest in these debts to Depository Trust. This fourth change of ownership is not fleeting. Depository Trust is the designated representative for all present and future owners, and it is the custodian of all present and yet to be issued mortgage-backed securities. But there is nothing in Plaintiff's chain of title recording the interest of Depository Trust, even though a self-imposed term required such a recording.

The fifth change of ownership took place when Depository Trust transferred its rights and interest to individual investors. None of these investors will be found in Montgomery County's land registration office. Even if these investors were listed, the information would be useless. You would have hundreds (maybe thousands) of investors all bearing the name *Cede & Co.*, the pseudonym of Depository Trust. At the end of the process, identities of owners are all masked.

If we consult the Montgomery County Land Registration Office, it has this to say about Plaintiff's debt. The owner and holder of this instrument is the Lender, American Home Mortgage. Its nominee and beneficiary is Mortgage Electronic Registration Systems. Today, American Home Mortgage is out of business and it has no successor in interest.[48] *These recorded representations are false.* American Home Mortgage and Mortgage Electronic Registration Systems hold no current interest in Plaintiff's debt. The true owners (i.e. investors) are not disclosed.

---

[48] *See* Doc. # 21, Joint Motion to Dismiss, Plaintiff Exhibit 6, Agreement.

## Non-compliance with Applicable Maryland Statutes

As a result of the MERS business model, three different sets of Maryland statutes governing land transactions and contracts have been violated. There are title defects, contract defects and enforcement defects.

## Title Defects

Before a title can pass to a purchaser, it must first be recorded. An unexecuted, unacknowledged deed of trust is not a recordable instrument. In the Maryland Code, declaring an instrument unrecordable is done positively and negatively. Md. Code Real Prop. § 4-101 (a) makes this statement positively.

(a) What deeds [are] sufficient; seal or attestation not required:

(1) *Any deed* containing the names of the grantor and grantee, a description of the property sufficient to identify it with reasonable certainty, and the interest or estate intended to be granted, is sufficient, *if executed, acknowledged, and, where required, recorded.* [Emphasis added.]

Md. Code Real Prop. § 4-109(c) makes this statement negatively by identifying formalities that render an instrument unrecordable.

§ 4-109 Defective grants.
(c) Failures in formal requisites of an instrument. For the purposes of this section, *the failures in the formal requisites of an instrument are;*

(4) *A lack of or improper acknowledgment or affidavit of consideration, agency, or disbursement.* [Emphasis added.]

The consequence attached to a defective instrument is set forth in Md. Code Real Prop. § 3-101(a) which states:

(a) *General rule*. Except as otherwise provided in this section, no estate of inheritance or freehold, declaration or limitation of use, estate above seven years, *or deed may pass or take effect unless the deed granting it is executed and recorded*. [Emphasis added.]

Plaintiff's deed of trust is not signed or acknowledged by either American Home Mortgage or Mortgage Electronic Registration Systems. If an instrument relating to land is not acknowledged by a corporate officer or a duly appointed agent, it is not a recordable instrument.[49] Until this instrument is properly acknowledged, the title remains parked with the originator of this debt obligation. Since American Home Mortgage has no functioning board of directors or officers or any successors in interest, this defect can never be cured.[50]

There is also a second title infirmity at the end of this thread of transactions. Every buyer of property expects to receive warranties relating to the title's legality, validity and enforceability. Investors can only pass on what they have been given. Depository Trust has not given investors warranties of legality, validity and enforceability. In accord with one Uniform Commercial Code provision and one Maryland real property statute, [51] investors cannot pass on warranties of legality, validity and enforceability because these warranties were never given to them.

---

[49] *See* Md. Code Real Prop. § 1-303 (b) requiring the signature of the president or vice president, and § 1-303 (a), requiring the signature of an appointed attorney. *See also* Md. Code Real Prop.  § 4-106(d) which also requires an agent affidavit confirming that they have been given the power to act on a corporation's behalf.

[50] *See* Doc. # 21, Joint Motion to Dismiss, Plaintiff Exhibit 6, Agreement.

[51] *See* Md. Code Comm. Law § 3-203(b) *and* Md. Code Real. Prop. § 2-103.

## Contract Defects

In Maryland, a deed of trust and a mortgage are functionally equivalent, and may be treated as a mortgage.[52] These instruments are also a contract.[53] Because they affect an interest in land, they qualify as a species of contract which is subject to the Maryland statute of frauds, Md. Code Real Prop. § 5 – 104, which states:

> "No action may be brought on any contract for the sale or disposition of land *or of any interest in or concerning land* unless the contract on which the action is brought, or some memorandum or note of it, *is in writing and signed by the party to be charged or some other person lawfully authorized by him*." [Emphasis added.]

Plaintiff's deed of trust is not signed by the Lender or Mortgage Electronic Registration Systems. Despite this fact, Plaintiff's debt has been sold at least five times that can be tracked through the Securities and Exchange Commission search engine. Pieces of Plaintiff's deed of trust have been available for sale on the secondary mortgage market since 2007. None of these contracts are valid.

## Enforceability Defects

Md. Code Real Prop. § 14-204 (a) establishes the principle that only a party with a pecuniary interest in the underlying debt instrument has authority to enforce a *power of sale* clause. Investors holding a 25% interest in the mortgage pool where Plaintiff's deed of trust has been assigned, clearly hold a pecuniary interest in this debt. These investors are entitled to enforce a power of sale clause.

---

[52] *See* Md. Code Real Prop. § 1 – 101(c) and 1 – 101 (i).
[53] *See* Md. Code Real Prop. § 14 -201(b)(1) [Contract running with land.]

The Trustee (i.e. Deutsche Bank) does not hold any pecuniary interest in these underlying debt instruments. Depository Trust does not hold any pecuniary interest in these underlying debt instruments. Mortgage Electronic Registration Systems, by its own admission, holds no pecuniary interest in these debts. The mortgage servicer also holds no pecuniary interest in Plaintiff's deed of trust.

25% of the owner-investors can delegate their authority to enforce a power of sale clause. This delegation of authority must be recorded; it cannot be accepted on faith. To qualify as a recordable instrument, it must be signed by the party (or parties) to be charged or by their duly appointed agent. If this is executed by an agent, proof of their authority to act on behalf of others must take the form of an affidavit contained on, endorsed on or attached to the recordable instrument.[54] There is no such delegation of authority recorded in Plaintiff's chain of title.

More fundamentally, securitization agreements make it impossible for investors to delegate this authority. In the first place, investors are not parties to the securitization agreements. Portions of these agreements devoted to the servicing of mortgages, describing actions to be taken for defaulting mortgages in ad nausea detail, are entered into and accepted by parties with no pecuniary interest in these debts. Investor-owner relationships are established by underwriters, who also have no pecuniary interest in the underlying debt instruments.

---

[54] *See* Md. Code Real Prop. § 4-106(d)

While there is perfunctory and conclusive language in these securitizing agreements stating that the Trustee (i.e. Deutsch Bank) is to act on investors behalf, there is no developed framework for enabling the Trustee to truly act on investors' behalf. Conversely, a developed framework with walls does exist around the Trustee for the sole purpose of making sure that the Trustee and investors *do not communicate with* one another. Deutsche Bank can regard Depository Trust, another party with no pecuniary interest in these debts, as sole representative for all investors. Investors can communicate with Depository Trust, but only on matters relating to their existing rules. Between these imposed limitations, there is no room for delegating authority *extending from owner-investors to the Trustee*.

Finally, investors cannot hide behind the Depository Trust pseudonym *Cede & Co*. The purpose served by a public recording system is to make ownership of land interests transparent and readily discoverable. A pseudonym that applies to millions of people, most of whom have no interest in a property, nurtures obfuscation and concealment, the antithesis of enlightenment and transparency.

### *In re Ferrel Agard*, Supporting Federal Caselaw

Federal courts are sorting out myth from reality in the MERS business model. Federal Bankruptcy Judge Robert Grossman had this comment.

> "MERS and its partners made the decision to create and operate under a business model that was designed in large part to avoid the requirements of the traditional mortgage recording process. This Court does not accept the argument that because MERS may be

involved with 50% of all residential mortgages in the country, that is reason enough for this Court to turn a blind eye to the fact that this process does not comply with the law."[55]

At the end of the day, the issue is simple and fundamental. Do we still believe in a government ruled by laws, or are we moving toward a government with special privileges for the powerful, allowing some people to rise above the law. MERS is definitely not abiding by real property laws as they exist today.

## Utilizing MERS as a Subterfuge

These violations of laws are flagrant and pre-meditated. They are flagrant because they are conspicuous. The *Uniform Instrument with Mers* form used for Plaintiff's deed of trust has no place set aside for a Lender's signature. It is premeditated because of the creation and purpose served by Mortgage Electronic Registration Systems. Outwardly, this shell company presented the appearance of complying with existing formalities. Looking through from to substance, it actually concealed a total lack of compliance. The term *subterfuge* means acts to propagate beliefs that are not true. *Subterfuge* precisely defines the role of MERS.

Md. Code, Real Prop. § 7-103 states in pertinent part:

(a) *The title* to any promissory note, *other instrument*, or debt secured by a mortgage, both before and after the maturity of the note, other instrument, or debt, *conclusively is presumed to be vested in the person holding the record title to the mortgage.* ..." [Emphasis added.]

---

[55] *See In re Agard*, 2011 Bankr. LEXIS 488 (Bankr. E.D.N.Y. Feb. 10, 2011).

If our viewing field is confined to Plaintiff's deed of trust at the recording office, Mortgage Electronic Registration Systems' credentials are impeccable. The lender made them nominee and beneficiary, armed with authority to exercise *any or all of those (i.e. Lender's) interests, including, but not limited to, the right to foreclose and sell the Property*.[56] This chain of title appears to be airtight. It starts, rides piggy-back and stops with Mortgage Electronic Registration Systems. Md. Code Real Prop. § 7 -103 states that title is *conclusively presumed to be vested in the person holding the record title* (i.e. MERS). This *recorded title* of MERS is filed at a place (i.e. the local recorder's office) where information is deemed to be authoritative. MERS is radiating the light of a blinding sun, calling attention to itself as the single indispensable entity holding cards giving it the authority to do anything.  Its rays are so bright, there seems to be nothing else on the landscape.

**Acts Propagated to Misrepresent the True Nature of an Activity**

Mortgage Electronic Registration Systems was never granted a valid interest by the Lender to act as its nominee and beneficiary. The statute of frauds requires an interest of this kind to be in writing and signed by the party to be charged.[57] The party to be charged is American Home Mortgage. There is no contemporaneous document from American Home Mortgage, making Mortgage Electronic

---

[56] *See* Plaintiff Exhibit 5, Deed of Trust, *Together With* clause on p. 3.
[57] *See*  Md. Code Real Prop. § 5 – 104.

Registration Systems their agent and beneficiary for Plaintiff's deed of trust. Since American Home Mortgage is now out of business, this defect will never be cured.[58]

Mortgage Electronic Registration System was never qualified to hold the legal title to Plaintiff's deed of trust. This debt obligation is a bearer instrument. Only a party holding physical custody of this bearer instrument has a colorable claim to holding its legal title, and that party is Deutsche Bank.[59]

Mortgage Electronic Registration Systems was never qualified to enforce the power of sale clause through foreclosure. By its own admission, Mortgage Electronic Registration Systems has no ownership interest whatsoever in any of the information posted to the MERS System.[60] Without a pecuniary interest in the underlying debt obligation, it has no authority to enforce a power of sale clause.[61]

Mortgage Electronic Registration Systems cannot convey the equitable and legal interest of Plaintiff's deed of trust to another party. The Uniform Commercial Code [62] and Maryland's property statute [63] both state that a transferee's rights are derivative of a transferor's rights. It is axiomatic that Mortgage Electronic Registration Systems cannot convey an equitable and legal interest to another, when it is not currently holding either interest in its own name.

---

[58] *See* Doc. # 21, Joint Motion to Dismiss, Plaintiff Exhibit 6, Agreement.

[59] *See* Md. Code Comm. Law § 3-205 [U.C.C. § 3 – 205].

[60] Plaintiff Exhibit 1, MERS Membership Rules, Rule 9 § 1 (b) at p. 28.

[61] Md. Code Real Prop. § 14-204 (a)

[62] *See* Md. Code Comm. Law § 3-203(b).

[63] See Md. Code Real Prop. § 2-103.

When the aperture is opened and the viewing field enlarged to include off-record transactions during the securitization process, the counterfactual role of Mortgage Electronic Registration Systems becomes conspicuous. The Lender's interest in Plaintiff's debt is sold. There is no evidence, not even a scintilla of evidence, proving that the new owners agreed to make Mortgage Electronic Registration Systems their nominee and beneficiary. The Investment Certificate acquired by the new owner-investors emphatically rejects the idea that Mortgage Electronic Registrations Systems retains any interest in the underlying debt. Even the pretense of reserving an ownership interest for MERS disappears, once these mortgages have fully navigated the securitization process.

*Deceptious appearance of title* is a term describing the appearance of a legally enforceable right of title over an interest in land, which is lacking in authenticity in essence or origin. In the case of Mortgage Electronic Registration Systems, its title is lacking in both authenticity in essence and in origin. As stated in the White Paper of the *National Association of Independent Land Title Agents,* Mortgage Electronic Registration Systems is a shell company that *pretends to own* all of the mortgages in the country. Compounding the problem, these false pretenses to ownership are filed in county recorder offices, where records are deemed to be authentic and reliance is conferred by statute. [64]

---

[64] *See* Md. Code Real Prop. § 4-103 and Md. Code Real Prop. § 7-103.

## Interest of MERS now Void Ab Initio

American Home Mortgage is now in bankruptcy. Acting through counsel for the Plan Trustee, the following admissions have been made by American Home Mortgage and are now a part of this Court's Record.[65] With the exception of the court appointed trustee, whose sole purpose is to wind down the affairs of this debtor, American Home Mortgage no longer has any directors or officers; they have no successors in interest; and they are permanently out of the business of making mortgage loans. On July 25, 2009, American Home Mortgage forfeited its charter to do business in Maryland.[66] Self authenticating documents from the Securities and Exchange Commission search engine confirm that American Home Mortgage sold its interest in Plaintiff's deed of trust over three years ago. The interest of American Home Mortgage in Plaintiff's deed of trust can now be declared void ab initio, an absolute legal nullity.

To the extent that Mortgage Electronic Registration Systems ever had any interest in Plaintiff's Deed of Trust, this interest sprang from the Lender, American Home Mortgage.  Furthermore, the interest of MERS was inextricably intertwined with the interest of American Home Mortgage. Since the interest of American Home Mortgage has now been reduced to a complete legal nullity, the same status must be applied as well to the interest of Mortgage Electronic Registration

---

[65] *See* Doc. # 21, Joint Motion for Dismissal, Plaintiff Exhibit 6,  Agreement.
[66] *See* Complaint, ¶ 3.

Systems. Its interest in Plaintiff's debt is also a complete legal nullity. Plaintiff respectfully asks this Court for an order declaring these interests null and void.

### Conclusion

For these reasons, Plaintiff asks this Court to grant this Motion for Judgment on the Pleadings against Mortgage Electronic Registration Systems.

Respectfully submitted;

/s/ Norman L. Sirak
_____
Norman L. Sirak, Bar # 29518
4035 Cinwood Street
Massillon, Ohio  44646
Phone (330) 478 1947
Email nsirak@parolereform.com

/s/ Dan Rupli
_____
Dan Rupli, Esq.
18 E. Orndorff Drive
Brunswick, Md.  21716
Phone (240) 481 2677
Email Rupli@aol.com

### Certificate of Service

A copy of the foregoing and all attachments will be sent to Russell J. Pope of the law firm Treanor, Pope & Hughes P.A. at 29 W. Susquehanna Avenue, Suite 110, Towson, Maryland 21204 and Alan Freeman, John Lucian and Jonathan Scott Goldman of Blank Rome LLP, at 600 New Hampshire Ave. N.W., Washington, D.C. 20037 via the Court's electronic filing system.

/s/ Norman L. Sirak
_____
Norman L. Sirak