## UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

| | | |
|---|---|---|
| ANN R. RUPLI, | : | Case No. 8:11-cv-00287-RWT |
| Plaintiff | : | |
| v. | : | |
| AMERICAN HOME MORTGAGE CORPORATION, *et al.,* | : | |
| Defendants | : | |

## MOTION TO DISMISS MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. WITH PREJUDICE PURSUANT TO FED. R. CIV. P. 12(b)(6)

Defendant Mortgage Electronic Registration Systems, Inc., ("MERS"), by its undersigned counsel, pursuant to Fed. R. Civ. P. 12(b)(6), hereby moves for its dismissal from this matter with prejudice. MERS relies on the accompanying memorandum of law in support of its Motion.

Respectfully submitted,

**BLANK ROME LLP**

Dated: March 28, 2011

By: */s/ Alan M. Freeman*
Alan M. Freeman
Attorney No. 013147
Watergate
600 New Hampshire Avenue NW
Washington, DC 20037
(202) 772-5925
(202) 772-5925 (fax)
freeman@blankrome.com

Jonathan Scott Goldman
Blank Rome LLP
130 N. 18th Street
One Logan Square
Philadelphia, PA 19103
(215) 569-5531
Fax:  (215) 832-5531
goldman-js@blankrome.com

*Motion for Pro Hac Admission Pending*

*Attorneys for Defendant Mortgage*
*Electronic Registration Systems, Inc.*

## UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

| | | |
|---|---|---|
| ANN R. RUPLI, | : | Case No. 8:11-cv-00287-RWT |
| Plaintiff | : | |
| | : | |
| v. | : | |
| | : | |
| AMERICAN HOME MORTGAGE | : | |
| CORPORATION, *et al.,* | : | |
| Defendants | : | |
| | : | |

## MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. WITH PREJUDICE PURSUANT TO FED. R. CIV. P. 12(b)(6)

Defendant Mortgage Electronic Registration Systems, Inc., ("MERS"), submits this memorandum of law in support of its Motion to Dismiss Mortgage Electronic Registration Systems, Inc. with Prejudice ("Motion") from this Complaint filed by Ann R. Rupli ("Rupli").

## INTRODUCTION

Rupli makes one thing certain: she wants title to the house in which she lives, free and clear. But, she does not want to repay her mortgage loan. And she does not seem to think that she has to. Nor does she want her house foreclosed upon. Though MERS and the other Defendants simply acted in accordance with the contracts Rupli signed, Rupli does not like the *system*. So Rupli asks this Court to quiet title and give the house to her.

While Rupli's narrative is intriguing, as a matter of law and policy, her claim must fail. The law, both in Maryland and throughout this nation upholds the right of

MERS to act as it did here—and as Rupli agreed it could—as set forth in the contracts Rupli signed. This makes sense as a matter of law.

As a matter of policy, Rupli's claim, too, must fail. Were Rupli and the millions of homeowners like her able to gain free and clear title to their homes without repaying their mortgage loans, simply because their loans were subsequently bundled and sold—as they consented to—our entire financial system would come crashing down anew. Rupli's vision of Robin Hood justice is utterly fanciful; it is neither the law nor the public policy of the State of Maryland.

For these reasons, this Court should grant MERS' Motion and dismiss MERS from Rupli's Complaint with prejudice.

## FACTUAL BACKGROUND

For the purpose of this Motion, MERS relies on the following uncontested, relevant facts that Rupli set forth in her Complaint and the exhibits attached thereto:

Rupli executed a deed of trust with American Home Mortgage on December 29, 2006 (the "Deed").[1]  Complaint, docket no. 3 at ¶ 10.  In signing the Deed, she borrowed $569,500 from the Lender to purchase an interest in property located at 1914 Elkhart Street in Silver Spring, Maryland, Montgomery County. Id. at ¶¶ 2, 11, 47.  The Deed was recorded on February 13, 2007.  Id. at ¶ 10.  It contains a *power of sale* clause, allowing the Lender to sell the home if the borrower is in default.  Id. at ¶ 12.  Rupli is in default, but she is not in foreclosure.  Rupli files her Complaint as a preemptive measure.

According to its website, "MERS is an innovative process that simplifies the way mortgage ownership and servicing rights are originated, sold and tracked." Id. at ¶ 4.

---

[1] Though Rupli attached the deed of trust to her Complaint in the Circuit Court of Montgomery County, Maryland, it does not appear to be available on the docket of this Court.  Accordingly, MERS attaches the deed of trust hereto as Exhibit "A" and incorporates its contents herein by reference.

131093.00606/12075083v.6

The website further explains that "[c]reated by the real estate finance industry, MERS eliminates the need to prepare and record assignments when trading residential and commercial mortgage loans." See, http://www.mersinc.org/. In the Deed, MERS is defined as a nominee for the Lender, American Home Mortgage, as well as the Lender's successors and assigns:

> "MERS" is Mortgage Electronic Registrations Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this Security Agreement. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

Exhibit "A" at 2 of 15. See also Complaint at ¶ 15.

The Deed has an entire section entitled TRANSFER OF RIGHTS IN THE PROPERTY. Ex. "A" at 3 of 15. This section explains that MERS, and its successors and assigns, is the beneficiary of the Deed solely as the nominee for the Lender and the Lender's successors and assigns:

> TRANSFER OF RIGHTS IN THE PROPERTY
>
> The beneficiary of this Security Instrument [defined as the Deed together with all Riders] is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note.

Id. See also Complaint at ¶ 15.

In signing the Deed, Rupli further acknowledged that, as nominee for Lender and Lender's successors and assigns, MERS has the right to foreclose and sell the Property:

3

> Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender....

Id.  See also Complaint at ¶ 120.

According to Rupli, the original Lender, American Home Mortgage, assigned her Note and the Deed to an affiliate called American Home Mortgage Investment Corp., which functioned as a holding company for mortgages.  Complaint at ¶ 48.  Then, American Home Mortgage Investment Corp. transferred ownership to another affiliate, American Home Mortgage Acceptance, Inc.  Id. at ¶ 52.  Next, American Home Mortgage Acceptance Inc. transferred the interest to American Home Mortgage Securities L.L.C.  Id. at ¶ 55.  After that, American Home Mortgage Securities L.L.C. transferred ownership to American Home Mortgage Investment Trust 2006-3.  Id. at ¶ 60. Subsequently, American Home Mortgage Investment Trust 2006-3 transferred the interest to Deutsche Bank, as the Indenture Trustee.  Id. at ¶ 68.  Rupli alleges that further transfers took place thereafter.  Id. at ¶¶ 77, 84.

In signing the Deed, however, Rupli expressly acknowledged that the Note, or a partial interest in the Note, as well as the Deed could be transferred numerous times without giving her prior notice:

> **20. Sale of Note; Change of Loan Servicer; Notice of Grievance.**  The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower.

Ex. "A" at 11 of 15.

4

The Deed further explained that in the event of a transfer, or otherwise, the Loan

Servicer might change in which case Rupli would receive written notice of the change

and the new name and address to which her mortgage payments should be made:

> A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing.

Id. at 11-12 of 15.

The Deed made clear, however, that even if the Note was sold and the Loan

Servicer was changed, Rupli's obligations would remain the same:

> If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Id. at 12 of 15.

In the event of a failure to satisfy her obligations, however, Rupli—in boldfaced

type—agreed to foreclosure pursuant to Title 14, Chapter 200 of the Maryland Rules

governing Foreclosure of Lien Instruments:

5

NON-UNIFORM COVENANTS.   Borrower and
Lender further covenant and agree as follows:

**22. Acceleration; Remedies.**

....

**Borrower, in accordance with Title 14, Chapter
200 of the Maryland Rules of Procedure, does hereby
declare and assent to the passage of a decree to sell the
Property in one or more parcels by the equity court
having jurisdiction for the sale of the Property, and
consents to the granting to any trustee appointed by the
assent to decree of all the rights, powers and remedies
granted to the Trustee in this Security Instrument
together with any and all rights, powers and remedies
granted by the decree.   Neither the assent to decree nor
the power of sale granted in this Section 22 shall be
exhausted in the event the proceeding is dismissed
before the payment in full of all sums secured by this
Security Instrument.**

Id. at 13 of 15 (emphasis in original).

In signing the Deed, Rupli agreed to all of its terms and conditions. Ex. "A" at 14
of 15 ("BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants
contained in this Security Instrument and in any Rider executed by Borrower and
recorded with it").

## LEGAL STANDARD

Rule 8 of the Federal Rules of Civil Procedure requires a complaint to include "a
short and plain statement of the claim showing that the pleader is entitled to relief." Fed.
R. Civ. P. 8(a).   Further, if the plaintiff is alleging fraud, Rule 9 requires "the
circumstances constituting fraud or mistake [to] be stated with particularity." Fed. R.
Civ. P. 9(b).  To survive a motion to dismiss, "a complaint must contain sufficient factual
matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft*

6

*v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Id.* at 1950 (quoting Fed. R. Civ. P. 8(a)(2)).

## ARGUMENT

### I. THE MORTGAGE NAMING MERS AS MORTGAGEE IS VALID WHERE A MORTGAGEE HOLDS THE LIEN ON BEHALF OF THE LENDER AND THE LENDER'S SUCCESSORS AND ASSIGNS.

#### A. Lenders and the Residential Mortgage Market.

When a mortgage lender loans money to a home buyer, two documents are obtained from a borrower: (1) a promissory note; and (2) a mortgage instrument granting secured interests in the property as collateral to repay the note. The promissory note is a negotiable instrument under Article 3 of the Uniform Commercial Code, and as such, it is often bought and sold. *See In re MERSCORP, Inc., RESPA Litigation*, MDL No. 1810, 2008 U.S. Dist. LEXIS 40473 (S.D. Tex. May 16, 2008).  The mortgage or secured instrument, as distinguished from the note, establishes a lien on the property that secures the repayment of the loan.  It is the mortgage or deed of trust that is recorded in the public local land records, not the promissory note.

Two aspects of the loan are then usually bought and sold—the servicing rights and the beneficial rights.  *Id.*  The servicing rights include the right to collect monthly escrow, principal, and interest payments from the borrower, and the beneficial rights include the right to receive the repayment of the loan itself.  *Id.*  For its part, MERS

7

serves as the mortgagee or beneficiary of record on behalf of, or as the nominee for, the lender and for the lender's successors and assigns.

**B.    How MERS Works.**

At loan origination, the lender takes possession of the note (and becomes the holder of the note), and the borrower and lender designate MERS (as the lender's nominee) to serve as the mortgagee or beneficiary whereby the lender's secured interest in the property is held by MERS.[2]  At the time of the loan origination, the borrower contractually agrees in the mortgage (or deed of trust) that MERS, as the nominee of the lender, will serve as the mortgagee or beneficiary.  After the borrower signs the mortgage or deed of trust, it is recorded in the public, local land records naming MERS as the mortgagee, as nominee for the lender, its successors and assigns.  Recording the mortgage or deed of trust fulfills the purpose of land records, in that it perfects the lien interest by putting the public on notice of the *existence* and priority of the lien interest.  It discloses the date of lien's creation, value, and who to contact regarding the lien interest.

MERSCORP, Inc., the parent company of MERS, then tracks the beneficial and servicing rights to the mortgage.  When the note is sold by the original lender to others, the sale of the note is tracked on the MERS® System.  As long as the sale of the note involves MERS members, MERS remains the named mortgagee of record, and continues to act as the mortgagee or beneficiary, as the nominee for the new beneficial owner of the note.  The seller of the note need not assign the mortgage or deed of trust because MERS remains the mortgagee as the nominee for the purchaser of the note, who is then the lender's successor and assign.  This relationship is memorialized in the security

---

[2] MERS is not involved in the loan origination process—that is, the process by which a borrower applies for a new loan, generally including all the steps from taking a loan application through disbursal of funds (or declining the application).

instrument which the borrower signs and is a party to, as well as by the MERS membership agreements that are entered into between MERS and its members (mortgage lenders and servicers).[3]

The lender's sale of the note makes the funds from sales available to additional home buyers/refinancers.[4]   The availability of these funds is the specific and intended result of the statutes that created the government-sponsored entities—to increase the availability of funds for home ownership in the United States. *See* 12 U.S.C. §§ 1451, 1716.

The U.S. Bankruptcy Court for the Western District of Missouri recently made a similar finding of facts regarding MERS. *In re Tucker*, Case No. 10-61004, 2010 Bankr. LEXIS 3072 (W.D. MO Sept. 20, 2010).   In *Tucker*, in determining whether MERS had authority to foreclose as beneficiary and nominee, the Missouri court held a hearing for the express purpose of determining MERS' role and—whether its role affects the enforceability of the Deed of Trust. *Id.* at *4.   The court's ruling provides the following description of MERS:

> At the hearing, William C. Hultman, the secretary and treasurer of MERS, testified, and offered into evidence its Membership Agreements with [the originating lender] and all assignees of the Debtor's Note here.   He testified that MERS was developed in order to allow the rapid transfer of mortgages.   Those who purchase mortgages in the secondary market, such as Fannie Mae and Freddie Mac, had determined that the existing system, under which each assignment of a mortgage or deed of trust needed to be recorded, was expensive and cumbersome, inhibited investment in the mortgage market, and increased the costs to borrowers.   The MERS

---

[3] The MERS membership agreement, and rules and procedures for MERS, which contain the contractual agreements between MERS and its member lenders or servicers, are available on the MERS website at www.mersinc.com.

[4] Notes are often sold to one of the government-sponsored entities created by statute to purchase residential mortgage loans from banks and other lenders. See 12 U.S.C. §§ 1451-59, 1716-23 *et seq.* (creating the Government national Mortgage Association ("Ginnie Mae"), Federal National Mortgage Association ("Fannie Mae"), and Federal Home Loan Mortgage Corporation ("Freddie Mac")).

system was therefore established to provide a central address for recording mortgages, and for taking certain specified actions at the direction of the holder of the note. What MERS does is to provide a system for registering who holds a particular note, and who is therefore empowered to exercise rights under the corresponding mortgage or deed of trust. Thus, each mortgage is given its own identification number for the life of the loan, and any member of the MERS system, as well as borrowers, may inquire as to who holds such loan at any given time, and how to contact them. . . . As of now, MERS has over 5000 members, including Fannie Mae, Freddie Mac, and all of the 100 top home lenders, as well as several companies that service loans on behalf of such lenders. The MERS system was used to record mortgage documents in approximately fifty percent of all currently outstanding home loans in the country, including approximately 600,000 in Missouri.

*Id.* at *12-13 (internal citations omitted). Contrary to the Plaintiff's allegations that the lender's identity was concealed from them, "the MERS website posts a toll-free number that borrowers may call to learn how to obtain information about the holder and status of their loan." *Id.* at *13-14. Indeed, "MERS receives thousands of calls each year from" borrowers requesting information about their loans. *Id.* at *14. Thus, MERS actually provides the Plaintiff with access to information regarding the identity of the note holder.

MERS acts as mortgagee or beneficiary on thousands of new mortgages each day. Almost every entity involved in home lending or servicing is a member of MERS.[5] By electronically tracking changes in servicing rights and beneficial ownership of the notes, the MERS® System fills an information void that the county clerks and other public records historically do not and cannot provide because promissory notes are not recordable documents. It is this current and easily accessible information that assists borrowers, consumers, title insurers and lenders to promote low-cost home ownership.

---

[5] In addition to Ginnie Mae, Fannie Mae and Freddie Mac, MERS Members include many national and international lenders, and many of the largest and most well-known title associations and insurance companies in the industry. A search of MERS Members is publicly available on MERS' website at www.mersinc.org.

II.   **MERS SHOULD BE DISMISSED FROM THE COMPLAINT BECAUSE ITS ROLE, AND THE ABILITY OF A LENDER TO TRANSFER ITS INTERESTS UNDER A NOTE AND DEED OF TRUST, HAVE CONSISTENTLY BEEN UPHELD UNDER MARYLAND LAW.**

Rule 8 of the Federal Rules of Civil Procedure merely requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). Rupli's narrative runs for fifty pages. But, even accepting as true the facts Rupli sets forth in her Complaint, Rupli cannot state a claim as to MERS "that is plausible on its face." *Ashcroft,* 129 S. Ct. 1937, 1949 (quoting *Twombly,* 550 U.S. 544, 570). Indeed, MERS' role, as Rupli describes it, has been upheld as proper numerous times under Maryland law. Similar complaints to Rupli's have been dismissed outright as to MERS. This Court should follow that precedent. Further, the ability of a Lender to transfer a Note under Maryland Law—even numerous times, and unsigned as a bearer instrument, as Rupli alleges here—has likewise been upheld. Though Rupli expressly accepted the terms and conditions set forth in the Deed when she signed it, it is clear that Rupli now rejects MERS and the system under which it operates. It is equally clear, however, that the law does not. The facts alleged in Rupli's Complaint, even if true, "do not permit the court to infer more than the mere possibility of misconduct". *Ashcroft* at 1950. Pursuant to Fed. R. Civ. P. 12(b)(6), then, Rupli's Complaint as to MERS must be dismissed as a matter of law. *Id.*

A.   **MERS Should Be Dismissed Because Its Role Has Repeatedly Been Upheld Under Maryland Law, Including By This Court.**

The role of MERS has been repeatedly upheld under Maryland law. Time and time again, MERS has been dismissed from complaints of borrowers facing foreclosure on similar theories that the borrowers' debts were extinguished when the original

11

mortgage lender sold their loan to another lender. Rupli's Complaint is no different. The Court should follow this deep precedent and grant MERS' Motion to Dismiss.

Last month, in *Jones v. HSBC Bank USA, N.A.*, No. RWT 09-cv-2904, 2011 U.S. Dist. LEXIS 10919 (D. Md. Feb. 3, 2011), this court decided a similar claim to Rupli's, that the defendants, including MERS, no longer had a security interest in the property because sales of the note and deed had "separated" one from the other. This court dismissed plaintiff's action to, among other things, quiet title, on *res judicata* grounds, concluding that the plaintiff previously raised the same wrongful foreclosure claims in state court and those claims were dismissed for failure to state a claim. In granting the motion to dismiss, this Court explained: "Jones advances the same argument in both [cases], namely, that Defendants have no security interest in the Property because the sale of the promissory note and deed of trust somehow 'split' the note from the deed of trust, voiding Defendants' interests." *Id.* at *11. This Court found that the Circuit Court has considered plaintiff's argument and rejected it.

In *Flores v. Deutsche Bank National Trust Co.*, No. DKC 10-0217, 2010 WL 2719849 (D. Md. July 7, 2010), this court dismissed the claims of a borrower facing foreclosure to, among other things, "Quiet the title of the property, because Plaintiff is the only party that can prove legal and equitable ownership interest." *Id.* at *2. The court determined that: the note and the deed are transferable; loan securitization or the purchase of credit default swaps or other insurance "does not absolve Plaintiff of responsibility for the Note"; the defendants could enforce the deed; and any subsequently-appointed trustee has the right to foreclose on the property because Maryland Rule of Procedure 14-204 allows "any successor trustee" to file an action to foreclose a lien. In dismissing the

12

complaint, the court stated that "[t]here is nothing in the allegations … that provides a basis for relief under the law of negotiable instruments of enforcement of deeds." *Id.* at *4. The court relied on the deep precedent in this Circuit:

> Several United States district courts in Maryland and Virginia have recently addressed cases that are similar to this one: they all share several common causes of action and have similar fact situations. *See Hammett v. Deutsche Bank National Company*, 2010 WL 1225849 (E.D.Va. 2010); *Horvath v. Bank of New York*, 2010 WL 538039 (E.D.Va. 2010); and *Parillon v. Fremont Investment and Loan*, 2010 WL 1328425 (D.Md. 2010). Much as in these other cases, Plaintiff in the instant matter has failed to allege facts upon which relief can be granted and therefore Defendants' motions to dismiss will be granted.

*Id.* at *5.

In *Suss v. JP Morgan Chase Bank, N.A.*, No. WMN-09-1627, 2010 WL 2733097 (D. Md. July 9, 2010), the plaintiff challenged the legitimacy of MERS, arguing that it had no authority to transfer any beneficial interest in mortgage loans and that any internal transfer or assignment of a note by MERS was void. The plaintiff also claimed that the securitization of the Note rendered it unenforceable. In granting summary judgment for defendants, however, this court found, as a matter of law, that the existence of MERS was valid, stating "courts that have considered the issue [of MERS and MERS Member's use of the MERS® System] have found that the system of recordation is proper and assignments made through that system are valid." *Id.* at *5 (citations omitted). *See also*, *Azzam, et al. v. Brunson, et al.*, #12-C-08-1967 at 5-6, (Harford County Circuit Court, Dec. 21, 2010) ("[b]ased on the express provisions of the Brunsons' Deed of Trust and the [reasoning in *Suss*, 2010 WL 2733097, and *Flores*, 2010 WL 2719849], the court believes that MERS had authority to authorize the initiation of this foreclosure proceeding…. The fact that the substitute trustees and not the original lender or trustee on

13

the Deed of Trust brought the foreclosure proceeding against the Defendants does not absolve the Defendants of responsibility for the Note.") and *Miles, Jr., et al. v. Sydnor, et al.*, No. 24-O-08-3542, (Baltimore City Circuit Court, Jan. 8, 2011) (holding that "the Deed of Trust expressly authorizes MERS to act as nominee of the lender or holder of the note" and that MERS has authority to appoint substitute trustees to the deed of trust for purposes of foreclosure).

In *Kelly v. Countrywide Home Loans, et al.*, No. PJM-06-1973 (D. Md. Oct. 31, 2006), this Court dismissed plaintiffs' claims with prejudice before MERS had even entered its appearance. In that case, the plaintiffs' loan had been sold on the secondary mortgage market at least once prior to the plaintiffs' default and the initiation of foreclosure proceedings, which were the catalyst for the complaint. One of the plaintiffs' two claims was that "a promissory note cannot be legally sold or transferred on the secondary mortgage market." *Id.* at 2. In granting the motion to dismiss under 12(b)(6), the court stated: "even accepting the vague set of facts provided in the Complaint, no cause of action can possibly be made out by the Complaint under any of the counts alleged by Plaintiffs. The Complaint contains assertions which are utterly fanciful, without the slightest foundation in law." *Id. See also, Jean Kelly v. Novastar, et al.*, No. AW-06-2616 (D. Md. Dec. 29, 2006) ("[n]owhere in the fragmented statements contained in the Complaint can the Court glean a cognizable legal theory"); *Freeman v. HSBC Mortgage Services*, No. AMD-06-02259 (D. Md. Jan. 26, 2007) ("[t]he gravamen of the plaintiff's claims appear to be the alleged unenforceability of the mortgage note, but for reasons that defy comprehension").

14

In *Jones v. EMC Mortgage Co.*, No. 2006-3038, 2007 WL 4960374 (D. Md. Feb. 5, 2007), *aff'd*, 251 Fed. App'x. 819 (4th Cir. 2007), borrowers sued claiming that when their mortgage loan was resold, the sale extinguished their obligation to pay the mortgage and entitled them to damages.  In granting the motion to dismiss, the court explained that the plaintiffs' legal theories were "fanciful":

> Like the other judges who have dismissed nearly identical complaints, the undersigned finds a complete failure to state a claim upon which relief can be granted…. The complaint itself and the opposition papers lack not only detail, but clarity, appear to rest on faulty premises, and rely on fanciful legal theories.

*Id.* at *1.  *See also, Jones v. Indymac Bank, et al.*, No. AW-06-2350 (D. Md. Mar. 21, 2007).

Rupli's case is no different than those cases that have come before.  Like in *Jones v. HSBC Bank USA, N.A.*, 2011 U.S. Dist. LEXIS 10919, Rupli claims that MERS no longer has a security interest in the property because the note and deed separated one from the other.  But the precedent in Maryland is clear.  Though Rupli does not like the system, a note is transferable and repeated sales and loan securitization on the secondary market does not absolve Rupli of her responsibility.  Defendants, here, can enforce the deed and have the right to foreclose on the property.  What MERS does has been repeatedly held proper under Maryland law.  MERS should be dismissed.

**B.     MERS Should Be Dismissed Because A Lender Has a Right To Transfer a Note and Deed of Trust under Maryland Law.**

Rupli's Complaint seeks to take on the system which allowed the transfer, bundling and securitization of her mortgage.  That system, however, is the law.[6]  Under

---

[6] See 12 U.S.C. §§ 1451-59, 1716-23 *et seq.* (creating the Government National Mortgage Association ("Ginnie Mae"), Federal National Mortgage Association ("Fannie Mae"), and Federal Home Loan

Maryland law, a lender has a right to transfer a note along with the equitable interest in the deed of trust, multiple times, and even unsigned as a bearer instrument, without the recording of an assignment. Md. Code Comm. Law § 3-205; U.C.C. § 3-205. For this reason, Rupli's Complaint should be dismissed as to MERS.

As recently as December 22, 2010, a three judge panel of the Court of Special Appeals of Maryland, decided a case with a fact pattern virtually identical to the one set forth in Rupli's Complaint. *See*, *Anderson v. Burson*, 9 A.3d 870, 196 Md. App. 457 (Md. Ct. Spec. App. Dec. 22, 2010). Affirming the role of MERS, the court separately held that under the shelter principle, Deutsche Bank acquired all the rights of all previous holders in due course when the mortgage note was transferred to it—even though the note was not properly indorsed—in the absence of evidence that anyone in the chain of title had engaged in fraud or an illegality.

A deed of trust with MERS as a beneficiary was involved in the *Anderson* case, as well. Indeed, the language in the deed of trust in that case is virtually identical to the language in Rupli's Deed, here. The court explains the origination of MERS and how it streamlines the mortgage process:

> In 1993, members of the real estate mortgage industry created MERS, an electronic registration system for mortgages. Its purpose is to streamline the mortgage process by eliminating the need to prepare and record paper assignments of mortgage, as had been done for hundreds of years. To accomplish this goal, MERS acts as nominee and as mortgagee, for its members' successors and assigns, thereby remaining nominal mortgagee of record no matter how many times loan servicing, or the mortgage itself, may be transferred.

---

Mortgage Corporation ("Freddie Mac")); see also 15 U.S.C. § 77r-1 (a)(1)(B) ("[a]ny person, trust, corporation, partnership, association, business trust, or business entity . . . shall be authorized to purchase, hold, and invest in securities that are . . . mortgage related securities.").

*Anderson,* 9 A.3d 870 at 871, fn. 1.

The court set forth MERS' role as a nominee for Lender and Lender's successors and assigns, explaining that MERS was the beneficiary under the deed. It quoted from the deed, which is identical to the language in Rupli's Deed:

> The beneficiary of this [Deed of Trust] is MERS (solely as nominee for Lender and Lender's successor and assigns) and the successors and assigns of MERS. This [Deed of Trust] secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this [Deed of trust] and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the [Residence].
>
> \*\*\*
>
> Borrower understands and agrees that MERS holds only legal title to interests granted by Borrower in this [Deed of Trust], but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the [Residence]: and to take any action required of Lender including, but not limited to, releasing and canceling this [Deed of Trust].

*Id.* at 871.

In addition to containing similar language as to MERS, the note in *Anderson* contained the following similar language with respect to the ability of the lender to transfer the note: "[Borrower] understands that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payment under this Note is called the 'Note Holder.'" *Id.*

The court set out a similar factual history to that of Rupli, here, in which the note was transferred numerous times and Mr. Anderson fell behind on his payments due under the note. When Deutsche Bank commenced foreclosure proceedings, the Andersons

alleged that the substitute trustees and Deutsche Bank had no legal standing to foreclose because they failed to establish that Deutsche Bank was the lawful owner or holder of the note and deed of trust. In permitting the foreclosure to continue, however, the motions judge stated that Deutsche Bank did have standing because it was a *bona fide* assignee for value:

> even assuming that the Defendant has a valid claim against the Mortgagee, such claims wouldn't defeat the mortgagee's interest in a Deed of Trust because it's a *bona fide* assignee for value. It is also a holder of the Note secured by the Deed of Trust; *Commercial Law* 3-302(a), *et cetera*. There is authority under *Heider vs. Bladen*, 83 Maryland, that the filing of the Note does not establish the invalidity [sic] of a foreclosure action. The law does not require the production of the original note for the enforcement, as a matter of contract.

*Anderson* at 874. Thereafter, Anderson filed for bankruptcy and the Trustee filed a "Complaint to Avoid and Recover Lien, for Declaratory Judgment and for other relief." The allegations of that Complaint are strikingly similar to the allegations made by Rupli. *See, id.* at 874-5.

On appeal, the court affirmed the motions judge. *Id.* at 875-6. In explaining that Deutsche Bank had a right to foreclose despite the multiple transfers and lack of endorsement, the court cited to the Uniform Commercial Code, Section 3-301, which states that: "A non-holder in possession of an instrument includes a person that has acquired rights of a holder by subrogation or under Section 3-203(a). *It also includes any other person who under applicable law is a successor to the holder or otherwise acquires the holder's rights*". *Id.* at 879 (emphasis in original). The appeals court held that Deutsche Bank fit within the definition of a "non-holder in possession of a note" because, under applicable law, it was a successor to the holder or otherwise had acquired the

18

holder's rights. *Id.* The court explained that "all of Deutsche [Bank]'s predecessors in the chain of title received delivery of the Note with the purpose of giving them the right to enforce the Note [because w]ithout a right of enforcement, the Note would have been worthless. *Id.* at 879 (citation omitted).

Following this logic, the court explained the "shelter" or "umbrella principle" by which a transferee acquires all rights of a transferor to enforce an instrument:

> Section 3-203(b) of the Commercial Law Article provides that "transfer of an instrument whether or not transfer is a negotiation [i.e., indorsed], vests in the transferee any right to the transferor to enforce the instrument, including any rights as a holder in due course, but the transferee cannot acquire rights of a holder in due course by a transfer, directly or indirectly, from a holder in due course if the transferee engaged in fraud or illegality affecting the instrument."

*Id.* at 879-80.

The court expressly stated that the shelter principle operates *cumulatively.* Thus, even where there are multiple transfers of a note or deed of trust, the final transferee holds all of the rights of the original:

> To attain its purposes of guaranteeing the transferor a ready market for his negotiable instrument, *the shelter principle operates cumulatively.* As some commentators explain, a transferee of a holder in due course takes through, rather than from, his transferor. *Thus, if the transferor's predecessor was a holder but the transferor was not, the ultimate transferee may succeed to the rights of the original holder: the holder's rights pass through each assignee.*

*Id.* at 880 (citations omitted).

Based on this reasoning, the court concluded that "Deutsche [Bank] acquired all the rights that had vested in its transferor because the shelter principle operates cumulatively. ... Thus, under applicable law, because it was not alleged that anyone in

19

the chain of title had engaged in fraud or illegality, *DEUTSCHE [BANK] WAS A 'successor to the holder' of the note and had the same rights [as the original transferor]."* *Id.* at 881.

Rupli may attempt to distinguish its case from that of *Anderson*, by arguing that, unlike in *Anderson*, Rupli has "alleged fraud or illegality" here.  Federal Rule of Civil Procedure 9 requires "circumstances constituting fraud or mistake [to] be stated with particularity."  Fed. R. Civ. P. 9(b).  Even accepting the allegations made in Rupli's Complaint as true, however, Rupli has not alleged fraud with sufficient particularity to survive this Motion to Dismiss.

Indeed, Rupli's allegations of fraud are nothing more than hyperbolic verbiage:

> 137. This conveyance from American Home Mortgage to [MERS] is a particularly toxic species of *fraud*, because the truth can only be discovered in documents filed with the Securities and Exchange Commission search engine, a place where a few people, including attorneys, will dare to venture.

> 138. Only a guilty state of mind could conceive of such a situation-specific and deceptive scheme.  Given this planning and its concealment behind intimidating legal documents, *the specific attempt to defraud can be inferred*.  This act is deliberate and it is a misstatement. These statements were lodged in a place where reliance is conferred by statute, and it is dictating the judgment of courts.

Complaint at ¶¶ 137-138 (Emphasis added); *See also, Id.* at ¶¶ 131-136.

Even accepting these claims as true for the purpose of this Motion to Dismiss, Rupli's statements do not set forth a claim as to fraud "that is plausible on its face". *Ashcroft* at 1949; Fed. R. Civ. P. 9(b).  Indeed, Rupli does not set forth a claim for fraud at all—much less a claim with specificity, as the law requires.

For this reason, it is beyond question that the shelter principle applies here. *Anderson*, 9 A.3d 870, 880-1. MERS "acquired all the rights that had vested in its [original] transferor because the shelter principle operates cumulatively." *Id.* at 881. Accordingly, MERS, as the express agent of the lender, should be dismissed because a lender has a right to transfer a note, even multiple times, and even unsigned as a bearer instrument, under Maryland law.

## CONCLUSION

For the foregoing reasons, this Court should grant MERS's Motion and dismiss all claims against it with prejudice.

Respectfully submitted,

**BLANK ROME LLP**

Dated: March 28, 2011

By:  */s/ Alan M. Freeman*
Alan M. Freeman
Attorney No. 013147
Watergate
600 New Hampshire Avenue NW
Washington, DC 20037
(202) 772-5925
(202) 772-5925 (fax)
freeman@blankrome.com

Jonathan Scott Goldman
Blank Rome LLP
130 N. 18th Street
One Logan Square
Philadelphia, PA 19103
(215) 569-5531
Fax:  (215) 832-5531
Goldman-js@blankrome.com

*Motion for Pro Hac Admission Pending*

*Attorneys for Defendant Mortgage Electronic Registration Systems, Inc.*

21

## CERTIFICATE OF SERVICE

I hereby certify that on the date below, a copy of the foregoing Motion to Dismiss Mortgage Electronic Registration Systems, Inc. With Prejudice Pursuant to Fed. R. Civ. P. 12(b)(6), supporting Memorandum of Law, Appendix and Draft Order were served electronically via the Court's CM/ECF system on all parties so subscribed.


Dated: March 28, 2011                           */s/ Jonathan Scott Goldman*