# Exhibit A

# District Court Decision

The District Court's decision begins on page 17 and concludes on page 24 of this transcript. This transcript is Docket No. 44 in the District Court Record.

**1**

1                    UNITED STATES DISTRICT COURT FOR
                        THE DISTRICT OF MARYLAND
2

3  -------------------------x
   ANN RUPLI,                   :
4             Plaintiff         :
                                :
5                               :
   vs                           :Civil Action: RWT-11-287
6                               :
   MORTGAGE ELECTRONIC          :
7  REGISTRATION SYSTEMS, INC. :
                 Defendant.     :
8  -------------------------x

9
                            Wednesday, October 19, 2011
10                          Greenbelt, Maryland

11

12        The above-entitled action came on for a Motions
   Hearing Proceeding before the HONORABLE ROGER W. TITUS,
13 United States District Court Judge, in courtroom 2C,
   commencing at 11:33 a.m.
14

15        **APPEARANCES:**

16        On behalf of the Plaintiff:
          NORMAN SIRAK, Esquire
17        DAN RUPLI, Esquire

18
          On behalf of the Defendant:
19
          JONATHAN GOLDMAN, Esquire
20

21

22

23

24
   Tracy Rae Dunlap, RPR, CRR            (301) 344-3912
25 Official Court Reporter

1                              **I N D E X**

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24                                                    <u>Page</u>

25  Reporter's Certificate . . . . . . . . . . . . . . . . . . . . . . .25

1          THE COURT:  Good morning.  Please be seated.

2          THE CLERK:  The matter now pending before this

3     Court is civil docket number RWT-11-287; Ann Rupli versus

4     Mortgage Electronic Registration Systems, Inc.  We are

5     here for the purpose of a motions hearing.

6          Counsel, if you would please identify yourselves

7     for the record.

8          MR. SIRAK:  I'm Norman Sirak, Your Honor, counsel

9     for plaintiff Ann Rupli.

10          THE COURT:  Okay.

11          MR. GOLDMAN:  Jonathan Goldman, Your Honor,

12     counsel for Defendant Mortgage Electronic Registration

13     Systems, Inc., known as MERS.

14          THE COURT:  All right.  Mr. Sirak, why were you

15     not here at 10 o'clock?

16          MR. SIRAK:  I didn't know about it.  I just got a

17     phone call at the hotel to come over as quickly as I

18     could.  I thought it was at 2 o'clock.

19          THE COURT:  The notice of the Court was very

20     clear.  There wasn't any mistake about it.  It said 10:00

21     a.m.  I mean, counsel are required to read what is in --

22     contained in a court order.  A court order was signed.  I

23     mean, this matter was originally continued at your

24     request.  And now -- and had to get continued because I

25     was in the hospital on September 8th.

1        I don't understand why people are not reading

2    orders from the Court.  It's really disconcerting that

3    people do not read what is in a court order.  There is no

4    excuse for not knowing it was 10 o'clock.

5        You've inconvenienced counsel for the defense,

6    who's come here and at a distance himself.  I just find

7    it bewildering.

8        All right.  We are here to hear your motion.  Let

9    me hear from you, sir.

10        MR. GOLDMAN:  Yes, Judge.

11        As I mentioned, Judge, my name is Jonathan Goldman

12    from the law firm of Blank Rome.  I'm here representing

13    the defendant, Mortgage --

14        THE COURT:  I did sign the order permitting you to

15    appear without your resident counsel.

16        MR. GOLDMAN:  Thank you, Your Honor.

17        If I may, I'm going to actually place on the ELMO

18    a brief portion of the Deed of Trust which Ms. Rupli

19    signed and which explains that MERS is here in its

20    capacity as nominee for the lender, the lender successors

21    and assigns, and as the beneficiary under the trust for

22    that purpose.

23        We're here on our 12(b)(6) motion, and MERS

24    respectfully requests that the Court dismiss plaintiff's

25    complaint with respect to MERS.  As the Court knows,

1 Federal Rules of Civil Procedure 8(a)(2) merely requires
2 a short and plain statement of the claim showing that the
3 pleader is entitled to relief.  Of course, for
4 allegations of fraud, Rule 9 applies which requires a
5 higher standard of pleading with particularity.

6        I had the occasion last night to sit on my couch
7 and re-read Ms. Rupli's complaint.  It's more than 50
8 pages, as you know, and 150 numbered paragraphs.  And
9 frankly, the facts set forth are really no different from
10 many, if not most, borrowers in the state of Maryland,
11 which is that they had a mortgage.  It was sold.  It was
12 maybe sold again.  And it ended up securetized in a
13 trust.  And yet, though I read this complaint again, I
14 see no claim upon which relief can be granted short,
15 plain or otherwise.  And I was looking.  I mean, I was
16 really trying to figure out what was happening.

17        Of course the standards for 12(b)(6), as the Court
18 is well aware, are Twombly and Iqbal.  And Ms. Rupli's
19 facts should be accepted as true as the facts are
20 pleaded, but the claim must be plausible on its face.
21 And a court cannot -- where a court can infer more than
22 the mere possibility of conduct, the complaint simply has
23 not shown that the pleader is entitled to relief, and the
24 complaint should be dismissed which is what we request
25 here.

1          Looking through the complaint, there are a few

2  relevant facts or admissions, really, which I wanted to

3  highlight.  One is Ms. Rupli has not paid her mortgage

4  since November of 2010.  That's just about a year.  The

5  complaint was filed in November, on November 29th 2010,

6  in the Circuit Court in Montgomery County, Maryland.

7  It's probably not a coincidence that the complaint was

8  filed at the time the plaintiff stopped paying her

9  mortgage.

10         In paragraph 151 of the complaint, plaintiff

11  concedes that she received a mortgage loan and that she's

12  indebted to the rightful owner of the mortgage.  By not

13  paying, she them she presumably concedes that she has

14  defaulted on her mortgage.

15         And then I wanted to highlight the paragraph that

16  I have up on the ELMO which, I think, is the crucial

17  paragraph from the Deed of Trust which Ms. Rupli signed.

18  It states quite clearly that the borrower understands and

19  agrees that MERS holds the only legal title to the

20  interest granted by the borrower in the security

21  instrument but, if necessary, to comply with law or

22  custom, MERS, in its capacity as nominee for the lender

23  and for the lender successors and assigns, has the right

24  to exercise any and all of those interests, including the

25  right to foreclose and sell the property.  That seems

1  pretty clear.

2       One thing -- in reading back my own briefs, one

3  thing I did want to clarify for the Court.  Rupli made an

4  argument based on an internal, I think tentative ruling

5  from MERS that MERS was going to foreclose in its own

6  name.  MERS doesn't have to foreclose in its own name.

7  It may foreclose in the name of the servicer or another

8  related party for whom it is the nominee.

9       Rupli, in the Deed of Trust, also acknowledged

10 that the trust -- sorry, that the mortgage could be sold.

11 It could be sold many times without notice but that she

12 would have to continue to pay her mortgage to the

13 servicer.  And, you know, MERS tracks the beneficial and

14 servicing rights when the note is sold.  In the deed

15 that's registered in the courthouse MERS is named, and

16 you can find information, as Mr. Sirak has found, on

17 public filings and the website.

18      But to be honest, it seems to me that it doesn't

19 much matter.  It's not even relevant who currently owns

20 the mortgage, because Ms. Rupli acknowledged that she

21 hasn't paid her mortgage and she's acknowledging giving

22 MERS permission to foreclose.

23      So, you know, to the extent that there is maybe

24 some hypothetical claim that the wrong person foreclosed,

25 or the proper owner wasn't given the proceeds or the

1 benefit of the foreclosure, that's not Ms. Rupli's claim.

2 That would be another party's claim, and even that is

3 highly hypothetical.

4         With regard to the Statute of Frauds argument.

5 The party to be charged is Rupli.  She is the one with

6 the duty.  She signed the Deed of Trust.  There is no

7 Statute of Frauds issue.  And, you know, all Maryland

8 case law that is out there that I've seen, Your Honor,

9 absolutely affirms the ability of MERS to act as it acts

10 and to do as it does, and that's the same that Ms. Rupli

11 did in her Deed of Trust.

12        And with that, that's all I have Your Honor.

13        THE COURT:  All right.  Thank you.

14        Mr. Rupli, where were you at 10 o'clock?

15        MR. RUPLI:  Your Honor, I apologize.  I'm the

16 author of the confusion.  I interposed a prior hearing

17 date as 2 o'clock, and it's entirely my fault.  I

18 apologize to the Court and --

19        THE COURT:  The Court has to expect people to read

20 court orders.  And when a court order says the date has

21 been changed from X date and Y date and changes the time,

22 you're supposed to put it on your calendar.

23        MR. RUPLI:  Your Honor, I did.  I put it on at the

24 wrong time.  I apologize to the Court.  I apologize to

25 opposing counsel and to my co-counsel.

1        THE COURT:  All right.  I have a matter scheduled

2   for noon.  And because this case was delayed, I asked the

3   parties from the noon case to come in early.  They have

4   arrived, so I would ask you to step back and let the

5   parties in the noon case come in.  It will take just a

6   few minutes, and we will hear your argument then.  Thank

7   you.

8                    (Off the record at 11:42 a.m.)

9                    (On the record at 11:47 a.m.)

10       THE COURT:  All right.  You may proceed as soon as

11  you're ready.

12       MR. SIRAK:  Okay.  Thank you, Your Honor.

13       Your Honor, I'm Norman Sirak.  I'm counsel for

14  plaintiff.  I'm pleased to be here to argue these

15  motions.

16       Opposing counsel has basically made two arguments.

17  The first argument is that it really isn't relevant who

18  the beneficiary of the Deed of Trust is; that's just

19  irrelevant.  And secondly, that MERS can be the

20  beneficiary because, and he quoted that particular

21  paragraph from the Deed of Trust.  It states that they

22  can act as the nominee for the lender.

23       I respectfully state to the Court that he is wrong

24  on both counts.  In the first place, we filed a motion to

25  strike several legal conclusions, and I want to take a

1 second and state for the record what a legal conclusion

2 is.

3      THE COURT:  Why is a Motion to Strike proper with

4 respect to someone's Motion to Dismiss?  It's not a

5 pleading.

6      MR. SIRAK:  Well, I think it's proper because this

7 is a dispositive Motion to Dismiss, and it's standing

8 almost entirely on legal conclusions.  And legal

9 conclusions are not facts.  And if these legal

10 conclusions are camouflaged as fact and accepted as

11 facts, we're dismissing a case -- we're dismissing a case

12 not because of the facts but because of legal

13 conclusions.  I'm challenging the legal conclusions

14 because they don't -- they can't stand the light of day.

15      And let me go -- let me pursue this a second.  A

16 legal conclusion is when the rights of parties are

17 intertwined with a principle of law such that the process

18 of deductive reasoning has to engage in conclusion of

19 law.  Mortgage Electronic Registration Systems claims to

20 be the beneficiary of plaintiff's Deed of Trust.  *Black's*

21 *Legal Dictionary* defines "beneficiary" as one designated

22 to benefit from an appointment, disposition or

23 assignment, or to receive something as a result of a

24 legal arrangement.  In short, a beneficiary must have a

25 beneficial interest in the underlying transaction.

1        In Maryland a Deed of Trust beneficiary is

2   intrinsically intertwined with two real property

3   statutes.  Maryland Code Real Property Section 7-105(D)(2

4   subparagraph (iii) states an order to foreclose, "must be

5   accompanied by an affidavit certifying ownership of the

6   debt instrument."  Plaintiff's reply brief pages 11-12.

7        Maryland Code Real Property Section 7-105.1(C)(1)

8   reserves the right to send out the notice to foreclose

9   only to the secured party, plaintiff's reply brief, Page

10  11.  "These laws reserve the right to foreclose solely to

11  the party owning the debt instrument.  Pursuing the

12  remedy of foreclosure in Maryland rides piggyback upon

13  these statutes.  When determining whether MERS can be a

14  beneficiary of plaintiff's Deed of Trust, the road taken

15  by deductive reasoning must travel across the statutory

16  bridges, and this engagement makes a conclusion of law

17  unavoidable."

18        Now I want to go to the second issue.

19        THE COURT:  Well, do you have any case authority

20  for the position you're taking?  Because counsel for the

21  defense has given me a very substantial body of authority

22  that's all in the contract.

23        MR. SIRAK:  My authority to the contrary is the

24  plain reading of those two statutes.  You know,

25  unfortunately not too many people have looked at this in

1 the way that I'm looking at it as conclusions of law.

2 The readings of these statutes are very clear. And, by

3 the way, MERS cannot make any statement that is the owner

4 of the debt instrument. They can positively not comply

5 with that.

6 But the second issue which is very, very critical

7 is whether they have the right to stand in as the lender,

8 which that is a legal conclusion. Mortgage Electronic --

9 the Deed of Trust spells out the relationship between

10 MERS and the lender in two different places. It states

11 Mortgage Electronic Registration System is acting solely

12 as a nominee for the lender. That's paragraph E on Page

13 2, and together with the clause of the Deed of Trust on

14 Page 3.

15 *Black's Law Dictionary* defines "nominee" as a

16 person designated to act in place of another, usually in

17 a very limited way. *Black's Law Dictionary* Page 1,076,

18 Eighth Edition, 2004.

19 The Deed of Trust only allows MERS to act in the

20 lender's place. Before MERS can become a party to this

21 contract, the lender must step aside. Now, when MERS

22 does act on behalf of the lender, the Deed of Trust is

23 clear about what they can do. MERS has the right, "to

24 exercise any or all of those lender interests, including

25 but not limited to the right to foreclose and sell the

1  property."

2          Maryland Statute of Frauds, Real Property Section

3  5-103 states, "no corporeal estate, leasehold or

4  freehold, and no corporeal interest in land may be

5  assigned, granted or surrendered unless it is in writing

6  signed by the party assigning, granting or surrendering

7  it, or his agent lawfully authorized by writing."

8          The terms in plaintiff's Deed of Trust cannot

9  elude the net cast by the Statute of Frauds.  The party

10  doing this assigning, granting and surrendering is

11  American Home Mortgage.  The argument that it was Ann

12  Rupli who is assigning and granting and surrendering is

13  nonsense.  American Home Mortgage and MERS has the

14  relationship, and American Home Mortgage has to grant,

15  assign and surrender its interest to MERS.  This lender

16  has assigned, granted and surrendered nothing.

17          Mortgage Electronic Registration Systems is

18  blocked from acting as the lender's agent because the

19  formalities of the Statute of Frauds have never been

20  observed, and that renders this entire matter a nullity.

21  So, Mortgage Electronic Registration Systems has no

22  beneficial interest, and they cannot masquerade as the

23  lender.  They haven't complied with the Statute of

24  Frauds.

25          Now, there's another very important legal

1 conclusion. It states that Mortgage Electronic

2 Registration Systems can act as beneficiary for the

3 lender successor in interest. Well, who is the lender

4 successor in interest? The lender successor in interest

5 is a majority of investors holding mortgage backed

6 securities. We have documented this fact with filings

7 from the SEC search engine.

8      By virtue of this investment, these investors own

9 a 50 percent or more interest in plaintiff's Deed of

10 Trust. A clause in the indenture agreement title,

11 persons deemed owners firmly establishes these investors

12 as the lender successors in interest. You cannot have an

13 agency relationship without a principal's acknowledged

14 consent. These investors must adopt MERS before it can

15 act as their agent.

16      There is nothing in writing indicating that these

17 investors have ever adopted MERS to act as their agent.

18 And unless it is in writing and recorded, it also doesn't

19 comply with the statute of frauds. In short, there is

20 nothing in writing indicating -- the two parties that

21 have the clear ownership interest of plaintiff's Deed of

22 Trust is first the lender and now the investors. There

23 is nothing in writing indicating that either the lender

24 or the investors have ever granted, assigned or

25 surrendered to MERS the right to act as their agent on

1  their behalf, and MERS has offered no evidence and no

2  argument to the contrary.

3          So, where does this leave us?  This is where I

4  believe it leaves us.  The party who truly has the

5  authority to foreclose on this Deed of Trust are a

6  majority of the investors.  And what -- and this wasn't

7  Ann Rupli's doing.  This is their own doing.  They have

8  to get a majority of these investors on a piece of paper

9  and they have to enter this lawsuit, and then their agent

10 can foreclose on the -- on this Deed of Trust and

11 property.  MERS can't do it, and nobody else can do it.

12         It's their own statements running against their

13 interest in the SEC filings that place them in this

14 place, and that's where they stand.

15         THE COURT:  All right.  Anything further?

16         MR. SIRAK:  Your Honor, just one last point.

17         THE COURT:  All right.

18         MR. SIRAK:  There was a third legal conclusion

19 challenged, and that was whether MERS still has the

20 authority to foreclose.  On July 22nd 2011, MERS

21 abandoned it authority to foreclose, and counsel conceded

22 that as well.

23         THE COURT:  All right.  Mr. Goldman.

24         MR. GOLDMAN:  Very briefly.  I don't think I

25 conceded at all that MERS abandoned its authority to

1 foreclose.  I think what Mr. Sirak is speaking about is
2 that internal proposed order which may have passed that
3 MERS wouldn't foreclose in its own name.  That doesn't
4 mean that MERS can't foreclose in its capacity as the
5 nominee.

6       I just wanted to point out two other things.  One
7 is Mr. Sirak kept pointing to part of the provision in
8 the Deed of Trust which Ms. Rupli signed, which is on the
9 screen, that MERS is the nominee for the lender but also
10 the -- that the part that was left out, and the lender's
11 successors and assigns for the purpose of exercising
12 those rights including foreclosure.

13       Rupli agreed there in that document that was on
14 the screen that that right belongs to MERS, as nominee
15 for the lender and the successors and assigns, and has
16 waived that argument that it's trying to raise now.

17       Second, the notion that there must be some sort of
18 writing between MERS and the current owner and that it
19 must be recorded.  Well, the recording's certainly not
20 true.  But to the extent that there must be a writing,
21 and there may be a writing, it's not relevant here.
22 Certainly, Ms. Rupli doesn't need to sign it or be aware
23 of it.  It doesn't involve her in that she's agreed and
24 she's conceded that she was going to make payments.  She
25 hasn't made payments and that MERS may act as to this

1 limited nominee for the reasons given to MERS by the

2 lender, the successors and the assigns of that lender.

3        And, last, the notion that, if I understand

4 Ms. Rupli correctly, that she wants a majority of the

5 investors in the trust which holds the securitization of

6 Ms. Rupli's mortgage, that they're all going to --

7 however many hundreds of people there are, that they're

8 going to come in here and have a vote and 50 plus one is

9 going to then foreclose doesn't make sense.

10        The holders of that right, even if that were the

11 way it worked, wouldn't be the investors in the trust.

12 It would be the trust itself.  That's not unlike saying a

13 corporation like Apple, you know, wants to make a

14 decision.  And, you know, you don't have all the

15 stockholders come in and take a vote.  It's a similar

16 principle here, Your Honor.

17        THE COURT:  All right.  The Court has before it

18 the defendant's Motion to Dismiss, as well as the

19 plaintiff's Motion to Strike portions of the Motion to

20 Dismiss filed by the defendant.  I've considered the

21 argument of counsel.  I have reviewed the memoranda

22 submitted by the parties and the various documents

23 attached.

24        There don't appear to be any factual disputes

25 between the parties at all.  The real issues that have

been raised have been the effect of the instruments
signed by the plaintiff in this case and the question of
whether the documents that give a role to Mortgage
Electronic Registration Systems, Inc., which is referred
to as "MERS" are legally questionable.

The factual history of this case begins with
Ms. Rupli's execution of a Deed of Trust in December of
2006 with American Home Mortgage in which she borrowed
$579,500.00 and executed a Deed of Trust in a form that
is widely used and which incorporates language giving a
role to play, which I'll describe in a moment, to MERS.

That Deed of Trust contains a power of sale that
allows the lender to sell the home if the borrower or the
grantor to the Deed of Trust is in default.  In that
instrument, MERS is named as the nominee of the security
instrument, and it states that MERS is acting solely as
nominee for lenders and lenders' successors and assigns,
something that counsel for the defense just emphasized in
terms of the argument being made by the plaintiff.

The Deed of Trust also contains language that
indicates that the beneficiary is MERS, solely as nominee
for the lender and lender successors and assigns, and the
successors and assigns of MERS.  And that that security
instrument, namely the Deed of Trust secures to the
lender the repayment of the loan and all renewals

1 extensions and modifications of the note, the performance

2 of the borrower's covenants and agreements under the

3 security instrument and the note.

4     The same section goes on the provide that Ms.

5 Rupli understands that MERS, as well as the successors

6 and assigns, hold only legal title to the interest

7 granted, which includes the right to foreclose.

8     In the same instrument, Ms. Rupli acknowledged

9 that the promissory note could be sold without giving her

10 notice prior to the sale of the note.  I won't detail off

11 all to have transfers that took place with respect to

12 this note, but it -- the note and deed and the rights

13 under the Deed of Trust were assigned to various American

14 Home affiliates.

15     Ultimately, following a series of transfers, it

16 went into American Home's Mortgage Securities, LLC which

17 then transferred it to an investment trust known as

18 American Home Mortgage Instrument Investment Trust 2006-3

19 will Wilmington Trust Company acting as trustee under

20 that trust instrument.

21     Ultimately, the interest and physical possession

22 of the deed was transferred to Deutsche Bank as an

23 indentured trustee.  Ms. Rupli is the only party that

24 signed that deed.  And it did effectuate a change in

25 ownership that affected her title.  She complains that

1  none of the subsequent owners of the Deed of Trust had
2  their interests recorded in the land records.

3       This matter was originally filed on November 29th
4  2010 in the Circuit Court for Montgomery County,
5  Maryland, and it was removed to this court by MERS.
6  There is no question as to the jurisdiction of the court,
7  because of diversity of citizenship and the amount of
8  controversy exceeding the required amount of $75,000.

9       MERS, after removal, filed a Motion to Dismiss on
10 February 28th of this year.  In response, the plaintiff
11 filed a Motion to Strike portions of the Motion to
12 Dismiss, as well as its response to the Motion to
13 Dismiss.  The plaintiff argued that the portions of the
14 opposition, excuse me, of the motion filed by the
15 defendant should be stricken; and the defendant responded
16 that this was not a proper motion under the federal
17 rules.  Specifically, a Motion to Strike may be filed to
18 strike from a pleading an insufficient defense or any
19 redundant, immaterial, impertinent or scandalous matter.

20       Pleadings specifically are not defined to include
21 a motion.  Accordingly, the Motion the Strike will be
22 denied.  It's not a proper motion.  Most courts that have
23 been met with motions to strike of this nature simply
24 treat the Motion to Strike as being an opposition to the
25 Motion to Dismiss, and that's exactly what I will do

1 here.  I will -- essentially, the language of both

2 documents is the same and they're making essentially the

3 same arguments.  So, while I'm denying the Motion to

4 Strike the Motion to Dismiss, I will consider the

5 arguments contained therein, to the extent that they're

6 not already incorporated into the opposition filed by the

7 plaintiff to the Motion to Dismiss.

8       The arguments made by the plaintiff have been made

9 before and, so far as this court can tell, uniformly

10 rejected whenever they've been raised.  MERS' involvement

11 in the mortgage market is a very substantial one.  Its

12 role is active throughout the United States, and it is a

13 significant component of the ability for the mortgage

14 market to function and to have free transferability of

15 interests arising out of mortgage transactions of the

16 nature in this case.

17       One court described the system as being one that

18 was put in place after those who purchased mortgages in

19 the secondary market, such as Fannie Mae and Freddie Mac,

20 determined the existing system under which each

21 assignment of the Deed of Trust needing to be recorded

22 was expensive and cumbersome, inhibited the investment in

23 the mortgage market and increased the cost to borrowers.

24 It was just for that purpose that the MERS system as was

25 created, and it has been uniformly upheld when challenged

1 in cases of the nature that have been brought here.

2      My colleague Judge Nickerson in Suss v JP Morgan

3 and Chase Bank; rejected almost identical arguments, and

4 he cited a number or of decisions that consistently and

5 repeatedly decided that the MERS system of recordation is

6 proper and assignments made through the system are valid.

7      Similar arguments were made in a case before me in

8 Jones versus HSBC Bank.  And although the Court did not

9 need to reach the merits of the matter to the extent

10 raised here, the conclusions I reached were consistent

11 with those of Judge Nickerson in Suss v JP Morgan Chase

12 Bank.

13      My colleague, Chief Judge Chasanow, in Flores

14 versus Deutsche Bank National Trust Company reached the

15 same conclusion and held that the note and deed were

16 clearly transferable; the defendants could enforce the

17 deed, and the plaintiff's mortgage could be combined with

18 other mortgages in a securitization process.

19      And my colleague, Judge Messitte, in Kelly versus

20 Countrywide Home Loans reached the same conclusion and

21 classified the plaintiff's contentions as those in this

22 case as "utterly fanciful, without the slightest

23 foundation in the law."

24      In Anderson versus Berson, a case decided by my

25 colleagues on the Court of Special Appeals of Maryland,

1 rejected some of the same types of arguments made by

2 Ms. Rupli in this case and stated specifically in the

3 Anderson case:  "The beneficiary of the Deed of Trust is

4 MERS, solely as nominee for lender and lender successors

5 and assigns.  This Deed of Trust secures to lender, one,

6 the repayment of the loan and all renewals, extensions

7 and modifications of the note and, two, the performance

8 of borrowers covenants and agreements under this Deed of

9 Trust and the note."

10      And they quoted again from the same language that

11 we mentioned just a moment ago in this case that, "The

12 borrower understands and agrees that MERS holds only

13 legal title and interest granted by borrower in this Deed

14 of Trust.  But if necessary to comply with law or

15 customs, MERS has the right to exercise any or all of

16 those interests, including but not limited to the right

17 to foreclose."

18      The Anderson court went on to reject arguments of

19 the type raised by Ms. Rupli in this case, determining in

20 that case that Deutsche Bank could be considered a

21 successor to the holder as all of Deutsche's predecessors

22 in the chain of title received delivery of the note for

23 the purpose of giving them the right to enforce the note.

24      In this case, Rupli attempts to distinguish

25 Anderson by asserting that MERS has committed fraud by

1  engaging in chicanery or legal trickery.  Apparently,

2  Ms. Rupli believes that all she's required to do to plead

3  fraud under the Federal Rules of Civil Procedure is to

4  make a conclusory allegation like that and have this

5  court infer that a reasonable mind could draw the

6  inference that MERS is disseminating false information to

7  facilitate legal trickery.

8        The Federal Rules of Civil Procedure are far more

9  specific than that.  And Rule 9(b) requires the

10 allegation of fraud must be made with particularity; and

11 must have the time, place and content of the false

12 representation, as well as the identity of the person

13 making the misrepresentation and what he obtained

14 thereby.  That type of language is utterly lacking in

15 this complaint.  I see no basis whatsoever for a

16 determination that MERS has engaged in any form of fraud.

17       Accordingly, for those reasons, I will grant the

18 defendant's motion with prejudice and direct the entry of

19 costs in favor of the defendant.

20       I will deny, as I  indicated previously, the

21 Motion to Strike portions of the Motion to Dismiss.

22       I will direct the entry of a judgment for costs

23 for the defendant, as I mentioned, and direct the clerk

24 of the court to close the case.

25       Thank you very much.

**25**

1               (Off the record at 12:12 p.m.)

2

3                      **CERTIFICATE**

4       I, Tracy Rae Dunlap, RPR, CRR, an Official Court
Reporter for the United States District Court of

5 Maryland, do hereby certify that I reported, by machine
shorthand, the proceedings had in the case of ANN RUPLI

6 versus MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.,
Civil Action Number RWT-11-287, on October 19, 2011.

7

       In witness whereof, I have hereto subscribed my

8 name, this 4th day of November 2011.

9

                __/S/__Tracy Rae Dunlap__

10            TRACY RAE DUNLAP, RPR, CRR

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25